Argued and submitted November 3,
Accused suspended for 30 days December 16, 1980

# In re: Complaint as to the Conduct of

## GLENN A. GEURTS,
*Accused.*

### (OSB 79-10, SC 27175)
620 P2d 1373

Howard R. Lonergan, Portland, argued the cause and filed briefs for the accused.

William M. Beers, Portland, argued the cause for the Oregon State Bar. With him on the brief was Pamela J. Beery, of Acker, Underwood, Beers & Smith, Portland.

Before Tongue, Presiding Justice, and Howell,* Lent, Linde, Peterson, and Tanzer, Justices.

PER CURIAM.

---

*Retired November 30, 1980.

## PER CURIAM.

The Oregon State Bar brought two disciplinary charges against the accused, Glenn A. Geurts. One cause of complaint was that the accused neglected a legal matter entrusted to him by a client.[1] The second charge was that the accused failed to respond to the Bar's inquiry concerning the complaint that gave rise to the first charge. A trial board found the accused guilty of the first charge and not guilty of the second charge. It recommended that the accused be reprimanded and suspended from the practice of law for 60 days. The Disciplinary Review Board found the accused guilty of both charges and concurred in the recommended penalties.

Before reaching the substance of the charges, we face an objection by the accused to the appointment of the trial board. The board was selected by the Bar's general counsel by direction of the Board of Governors. The accused contends that this function cannot be delegated.

■ ORS 9.550, a section of the statute establishing the Oregon State Bar and defining its role in professional discipline, provides:

"(2) If it shall appear to the [Board of Governors] . . . that grounds for public reprimand, suspension, or disbarment exist against a member, the board shall appoint counsel and a trial board; and proceedings shall be conducted as required by ORS 9.560 and the rules of procedure."

The statute elsewhere authorizes the Board of Governors to "appoint such committees, officers and employes as it deems necessary or proper," ORS 9.080(3) but it does not expressly state all functions that may or may not be delegated to committees, officers, or employees.

An exhibit in the present case shows that at the meeting at which the Board of Governors voted to institute this disciplinary proceeding, the board directed that a trial

---

[1] "DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

. . . .

(3) Neglect a legal matter entrusted to him."

board be appointed by the general counsel. The record does not show whether this is the general practice. No general delegation of this function appears in the board's bylaws or rules of procedure.[2] The rules do state a standard for the composition of trial committees which is designed to exclude from a trial committee anyone directly or indirectly associated with the Board of Governors during the investigatory as well as the hearing stage of a disciplinary case.[3] The principle of this very proper concern may also contradict the appointment of trial board members by an officer who participates in reviewing and formulating the complaint,[4] but that is not the accused's objection. He contends that the selection of each trial board must be made by the Board of Governors itself and cannot be delegated to anyone, for instance a committee or the Bar's executive director.

■ We believe the argument goes further than the statute requires. It is enough if the Board of Governors takes responsibility for the composition of a trial board in

---

[2] Under article 9 of the bylaws the general delegation of a function, if it is delegated at all and not specifically delegated to another officer, runs to the Bar's executive director rather than to other members of the staff:

"9.1 DUTIES OF THE EXECUTIVE DIRECTOR: The Executive Director, appointed by and acting under the supervision of the Board, shall be the principal administrative officer of the Bar and shall supervise its administrative affairs and personnel; shall attend all meetings of the Board and the Bar and shall keep a record of the proceedings of all such meetings. The Executive Director shall perform such other duties as are or may be imposed upon the Executive Director by the Bar Act, Bylaws and policies of the Board and as may be otherwise directed by the Board."

[3] Section 38 of the Rules of Procedure provides:

"Any resident active member may represent an accused (applicant) or may serve as a member of a trial or review board in a disciplinary, reinstatement or admission proceeding, except a governor or his partner, employer, employee or associate and except:

"(a) In a disciplinary proceeding, a former governor or his partner, employer, employee or associate, if the professional misconduct with which the accused (applicant) is charged in the proceeding to be tried was under investigation, or if the proceeding to be tried was instituted, during the term of office of such former governor.

. . . . "

[4] *See* K. Davis, 2 Administrative Law Treatise §§ 13.01, 13.06, 13.07 (1958) and K. Davis, Administrative Law of the Seventies § 13.02 (1976).

fact and not only in law, that is to say, if the proposed membership is reported to the Board of Governors and the board has sufficient opportunity to approve or disapprove the appointments in advance of the proceeding. The rules of procedure safeguard the accused's opportunity to object to a proposed appointee to a trial board.[5] The record does not show that Mr. Geurts exhausted this opportunity to challenge an appointee for cause or peremptorily or to demand that the Board of Governors appoint a different trial board, beyond his brief, formal objection to the fact that its members had been selected by the general counsel. Under the circumstances, it is difficult to see how he could claim to have been prejudiced by that fact. Accordingly, we do not accept this objection to the proceedings.

The facts giving rise to the first charge, that of neglecting a legal matter entrusted to the accused, were summarizied by the Disciplinary Review Board as follows:

"Accused was retained for the purpose of representing the client's interest in obtaining a settlement from the insurance company which insured the driver of the car causing the death [of the client's child]. . . .

"The testimony and evidence show that during the two years after the accident the client made 10-12 telephone calls and wrote two letters to the Accused requesting progress reports. No substantive responses were received. The insurance adjustor, who was prepared to make a settlement offer to the Accused, made 17 telephone calls and wrote 3 letters to the Accused. No substantive contact was made and calls were not returned. The Accused testified he placed some phone calls but could not provide

---

[5] "Section 40. Challenge and Disqualification. (Effective September 21, 1976) When the trial board is constituted, the executive director or general counsel shall notify the accused (applicant) and counsel for the bar of the names of its members. Within 10 days after the giving of such notice, the accused (applicant) and counsel for the bar shall file in writing with the executive director any challenge or challenges against a member or members of the trial board. The accused (applicant) and counsel for the bar shall be entitled to one peremptory challenge and to an unlimited number of challenges for cause. The president or the board shall pass upon any challenge for cause and shall fill any vacancy resulting from the allowance of any challenge. The accused (applicant) and counsel for the bar shall be served with notice of the name of any substitute member of the trial board; and the accused (applicant) and counsel for the bar may challenge for cause such substitute member, within the time and in the manner hereinabove provided for cause, or peremptorily if his peremptory challenge has not previously been exercised."

dates. The accused did not write any letters to his client or the insurance adjustor during the two years. The Accused testified that he interviewed a person who witnessed the auto accident but was unable to provide the name of the witness. . . ."

After these two years of inaction, the claim was taken over by a different attorney who communicated with the client and the insurance adjuster and in due course arranged a settlement of the claim.

■■ Upon review of the record we concur in the conclusion of the trial board and the Disciplinary Review Board that the accused neglected his client's claim in violation of DR 6-101(A)(3), above. This court has had recent occasion to emphasize that neglect and procrastination are violations of professional responsibility as much as the other forms of professional misconduct. *See, e.g., In re Holm,* 285 Or 189, 590 P2d 233 (1979), and Justice Holman's concurring opinion at 194, pointing out the potentially disastrous consequences of procrastination or inattention for the parties concerned. *See also In Re English,* 290 Or 113, 618 P2d 1275 (1980); *In re Kraus,* 289 Or 661, 616 P2d 1173 (1980). In this case we conclude that a 30-day suspension is appropriate on this charge, but this should not be misunderstood to mean that substantially stronger disciplinary measures may not be applied to future violations of DR 6-101(A)(3).[6]

Concerning the second cause of complaint, that the accused failed to respond to the Bar's inquiries, the Disciplinary Review Board found as follows:

"The General Counsel of the Bar wrote the Accused three letters requesting a response to the client's complaint. The Accused's only response was a telephone call to the Bar office stating that he had mailed a reply, and would send a copy of the reply. When no copy was received, the Bar appointed an investigator. There is conflicting testimony as to whether the Accused told the investigator he would furnish him with a copy of his original letter, or whether he would furnish the investigator with a new letter outlining the substance of the original letter. In any

---

[6] The accused offers as a defense that the client's claim lacked merit so that to pursue it would contravene DR 2-109(A)(2). If so, this cannot excuse a failure promptly to consult with the client and discuss this conclusion with him.

event the investigator confirmed the conversation by writing the Accused a letter stating that only a copy of the Accused's original response to the Bar would be acceptable. The investigator would not accept a new letter, and he closed by saying that if he did not receive a copy he would assume that no such letter had actually been sent to the Bar.

"The Accused testified that he did not keep office copies of his letters and thus could not give the investigator the copy of the original that he wanted. Since that was the only thing the investigator would accept, he felt there was no purpose in replying to the investigator, and he did not reply. . . ."

■ The accused asserts as a defense the constitutional privilege not to be a. witness against himself in a criminal case.[7] If an accused plausibly claimed that his response to a question posed in a noncriminal proceeding could be used against him in a criminal prosecution, he could not be compelled to answer the question, but Mr. Geurts made no such assertion. Professional disciplinary proceedings themselves are not criminal prosecutions.

■ However, the Bar does not show what legal or disciplinary rule the accused violated by failing to respond to the Bar's inquiries. The Bar's complaint asserted only that the conduct alleged in the two counts, "taken in the aggregate, was and is detrimental and prejudicial to the honor, integrity and standing of the profession of lawyer, the practice of law and the administration of justice in this state, and was and is subversive to the public interest" and constituted conduct "rendering the accused unfit to practice law in this state" and precluding his admission to practice if he were now seeking it. The Disciplinary Review Board, disagreeing with the trial board as to this charge, gave this explanation: "We are of the strong belief that the Bar has a very strong right to require timely responses to inquiries

---

[7] Or Const art I, § 12:

"No person shall . . . be compelled in any criminal prosecution to testify against himself."

U S Const, amend V:

"No person shall . . . be compelled in any criminal case to be a witness against himself, . . ."

made to members of the Bar. This right to timely response is essential to the proper functioning of the Bar. It is a basic disciplinary tool."

These statements by the Bar and the Disciplinary Review Board do not suffice to show a disciplinary violation. We do not imply approval of noncooperation with the process of investigation into complaints about a lawyer's professional conduct. Readiness to accept the obligation to account for one's performance is an important element of professionalism, as the board states. However, if noncooperation itself is to be made a ground for imposing a disciplinary penalty, the rules of professional discipline ought to give fair notice of the terms and limits of that obligation.[8] They do not do so now. Accordingly, we conclude that no penalty should be imposed on the second cause of complaint.

The accused is suspended for 30 days. The Oregon State Bar is awarded judgment against accused for its costs and disbursements.

---

[8] *Cf. Megdal v. Oregon State Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980).