Submitted on record February 26, accused suspended April 2, reconsideration denied May 7, 1985

## In re Complaint as to the Conduct of
## VIRGIL E. DUGGER,
*Accused.*

### (83-58; SC S31142)

697 P2d 973

Christopher R. Hardman, Portland, for Oregon State Bar.

No appearance contra.

PER CURIAM

## PER CURIAM

The Oregon State Bar charges the accused with several disciplinary violations in the representation of a client and later in failing to respond to the Bar's investigation of the client's complaint. The Disciplinary Review Board found violations of two disciplinary rules, and the Bar asks this court to adopt the Board's decision. The accused having made no appearance in this court, the case was submitted on the record before the Board.

The Bar's complaint, in summary, charges the following: The accused was retained by William J. McIlwain to collect a debt allegedly owed to him under a construction subcontract. The accused filed a construction lien for his client in July, 1980. The accused later discovered that McIlwain was not registered as a licensed contractor with the Builder's Board, but he never advised McIlwain of the probable consequences of non-registriation for seeking to foreclose the lien or of possible alternative remedies. The client was unable to reach the accused at his office, and the accused did not return the client's telephone calls. According to the complaint, the accused untruthfully advised the client in 1982 that he had filed suit to foreclose the lien and that a trial date would be set soon. Also, the Bar charges that the accused failed to educate himself as to the substantive and procedural law governing the client's claim and therefore should have known that he was not competent to handle the case.

For a second cause of complaint, the Bar charges, in summary, that the accused failed to respond to a series of messages from representatives of the Bar seeking to investigate Mr. McIlwain's complaint.

The trial board made findings of fact, of which the most important are that the accused told the client that the lien had been filed and that they "should get ready to foreclose," that upon research the accused concluded that there was "no way to get into court," that during 1980 the accused did not tell McIlwain that there was a serious problem in enforcing the lien nor that any alternatives might be considered, that in the fall of 1981 the accused told the client that he had filed the foreclosure action and would get a court date, and that the accused did not respond to the client's calls or communicate with the client at all in 1982, finally telling him

in early 1983 that the accused could not "find his way into court." On the Bar's second cause of complaint, the trial board found that after receiving the initial letter from the Bar's general counsel's office, the accused spoke with the Bar's assistant general counsel, but thereafter he did not respond to a second letter or later inquiries by the Bar's investigator until a subpoena was served on him in June, 1983. The trial board concluded that the accused violated DR 6-101(A)(3) and DR 1-103(C) but was not guilty under other rules cited by the Bar.[1]

The Disciplinary Review Board agreed with the trial board's conclusions. After reciting the facts and finding that there was no clear and convincing evidence of misrepresentation or of handling a legal matter beyond the accused's competence, the Disciplinary Review Board's opinion states:

"Finally, the first cause of complaint charges the Accused with violating DR6-101 (A)(3), neglecting a legal matter

---

[1]
"DR 6-101 Failing to Act Competently.

"(A)  A lawyer shall not:

"* * * * *

"(3)  Neglect a legal matter entrusted to him."

"DR 1-103 Disclosure of Information to Authorities

"* * * * *

"(C)  A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of the general counsel, the local professional responsibility committees, the state professional responsibility board, and the board of governors as requested, subject only to the exercise of any applicable right or privilege."

The Bar's complaint also charged violations of ORS 9.460(4), which requires attorneys to use "such means only as are consistent with truth," and DR 1-102(A)(4), which provides:

"DR 1-102 Misconduct

"(A)  A lawyer shall not:

"* * * * *

"(4)  Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Finally, the complaint charged violation of DR 6-101(A)(1) which forbids a lawyer to undertake "a legal matter which he knows or should know that he is not competent to handle," without associating a competent lawyer.

entrusted to him. The Trial Board found him guilty. The evidence shows that the Accused started the case in an orderly manner and maintained good notes to about the time he discovered that the client was not registered with the State Builders Board. The Accused apparently realized then that the client had few, if any, legal rights to collect his money. It appears that Accused simply dropped the case at that time. There is little, if any, evidence to show that the Accused took the affirmative step of calling his client, explaining the seriousness of the situation in detail, and developing with the client a plan of action. The client says he was not fully informed of the weakness of his position and assumed a foreclosure suit was pending all the while. There is no evidence that the Accused ever informed the client fully of what was happening. And there is much testimony they did not communicate with each other. The client says the Accused would not return his phone calls and the Accused said the client never called.

"We believe the Accused seriously neglected this case and we agree with the Trial Board and find the Accused guilty."

As to the charge under DR 1-103(C), the Disciplinary Review Board wrote:

"The second cause of complaint concerns the manner in which the Accused responded to an inquiry from the Oregon State Bar. In March 1983, client McIlwayne (sic) filed a complaint with the Bar regarding the Accused's handling of the above case. On March 31, 1983, the Bar wrote to the Accused asking for a response to McIlwayne's complaint. The March 31 letter specified that a response be made by May 2. At about the same time the Bar sent a similar letter to the Accused regarding a different complaint. The Accused apparently responded fully to the second complaint and spoke with Bar personnel about it. In the course of discussing the second complaint (which apparently was found to be without merit) Accused mentioned that he would be leaving the country on April 28 for five weeks and would not have time to respond to the McIlwayne complaint. Accused apparently thought this mentioning of the point would give him an extension of time to respond. The Accused did leave April 28 and did not return to his office until June 7. He found awaiting him at the post office two more letters written in May demanding a response. On June 10, 1983, an investigator appointed by the Multnomah County Local Professional Responsibility Committee phoned and left word for Accused to call him. Receiving no reply, a subpoena was served on the Accused. This caused him to respond to the Bar's investigator.

"Accused states he believed the phone call with the Bar's staff prior to his departure was sufficient to get him an extension on time to respond. And he believed that the accumulated backlog of trial work which awaited his return was an adequate reason for not replying to the two May letters and the investigator's phone call.

"The second cause of complaint alleges the Accused violated DR1-103 (C) requiring an attorney to affirmatively and promptly respond to the Bar inquiries. It was felt by agreed Trial Board members that a simple letter to the Bar requesting an extension could have gained an extension but the Accused did not write such a letter and make such a request. The Trial Board found him guilty. We agree."

Both boards recommended a reprimand.

A troubling issue arises from the way the two boards handled the Bar's charge that the accused violated DR 1-102(A)(4) by falsely telling his client that he had filed an action to foreclose the lien and was awaiting a court date. The trial board's Findings of Fact contained the following:

"VIII.

"In September, 1980, the Accused spoke with McIlwain and told him that there were 'troubles with the lien' or 'troubles with the name' and that the Accused would check further.

"IX.

"In the Fall-Winter of 1980, the Accused told McIlwain that the lien had been filed and that they 'should get ready to foreclose.' The Accused thereafter researched the problem and determined that there was 'no way to get into court.' The Accused did not, during 1980, tell McIlwain of the seriousness of the problem, nor of any alternatives to consider.

"X.

"As of January 3, 1981, the construction lien had expired. The Accused did not advise McIlwain of this fact.

"XI.

"McIlwain telephoned the Accused in the Fall of 1981 and inquired as to the status of his construction lien matter. The Accused told McIlwain that he had filed the foreclosure and would get a court date, probably after the first of the year."

The last sentence flatly finds that the accused made the representation alleged by the Bar. Nevertheless, the trial

board's conclusions state that "[t]he Accused is not guilty of a violation of DR 1-102(A)(4), and the standards of professional conduct established by law and the Oregon State Bar." "Law" presumably includes ORS 9.460(4), the obligation of truthfulness. The board's conclusion is unexplained. The explanation cannot be that the accused in fact "had filed the foreclosure," because the accused himself testified that he had not.

The Disciplinary Review Board, as to the alleged misrepresentation, only wrote:

"The Trial Board concluded there was not enough clear and convincing evidence to prove that the Accused engaged in such conduct. The Trial Board found him not guilty. We agree."

The Disciplinary Review Board made no reference to paragraph XI of the trial board's Finding of Fact, quoted above, and made no finding of its own. Its opinion does not disclose why it "agreed" with the trial board.

Misrepresentations to clients in violation of DR 1-102(A)(4) potentially carry disciplinary penalties more severe than a reprimand. *See, e.g., In re Morrow,* 297 Or 808, 688 P2d 820 (1984) (60 day suspension for neglecting client's matter and falsely leading client to believe client's action had been filed). Because this court must determine the facts anew upon the record, ORS 9.536(3), we set out the evidence on this issue.

Mr. McIlwain testified that he had a brief telephone conversation with the Accused in the summer of 1981:

"Q  What exactly did you say, if you can recall?

"A  I asked him what he was going to do and he said he was going to foreclose on it, on the lien.

"Q  Are those his exact words?

"A  I don't really — I couldn't really tell you what he was talking about.

"Q  Did he mention court to you at any time during that conversation?

"A  Not the first one."

Later he testified to a second telephone conversation in the Fall of 1981:

"Q   Did you have any other phone conversations between the summer of '81 and October of '81?

"A   Just the one that I — he said I was going to file a lien against or file the lien — foreclosure on it. And then I had another one with him. He said he was — he had filed foreclosure and he was going to — we were going to — we were going to go to court.

"Q   Are those his exact words?

"A   Well, within — similar to it. I can't tell you — he said he was going to get a court date, file for a court date."

Again, on cross-examination, the client testified that in the second conversation "[the Accused] said that he was going to foreclose on the lien and that we was going to have a court date." According to his testimony, the probable court date was discussed because Mr. McIlwain was going to be away for a month during the hunting season, and the accused said the date would be before the end of the year.

The accused testified as follows:

"Q   * * * did you at any time under any circumstances ever tell Mr. McKelwayne (sic) that you had filed a case and that it was coming up for trial?

"A   Absolutely not.

"Q   Did you ever tell him that you had filed a case?

"A   I told him I had filed a lien and the same day — he called me up several days later and I told him the lien was filed and that a letter had been sent pursuant to statute. But I never told him any lien was filed. I told him I had to find a way into court and that I would give it some time and I would take considerable research to see if I could find a way into court."

And again:

"MR. BOWLES: So, you never told him you filed?

"THE WITNESS: No, I never did. I said that we would have to find some way to get it into court. I told him that after he called me that I filed the lien, but that is the only word I ever used, I filed, with Mr. McKelwayne."

The argument to the trial board on behalf of the accused was that the client must have confused a statement about filing the lien with filing foreclosure proceedings. The Bar argued that Mr. McIlwain, who was experienced in construction work, knew the difference between filing a lien

and foreclosing it. We believe, as the trial board apparently did, that the two did discuss an expected court date in a foreclosure action, not the filing of a lien. The client's testimony to that effect gains credibility from the specific references to his expected absence during the hunting season, references which were not contradicted by the accused. The discussion could have left the accused in no doubt that his client understood him to have initiated litigation, not merely filed a lien. That had already been done on July 3, 1980.

■   As already stated, we are obliged to make our own determination whether the evidence supports the Bar's charges, even though the Bar now appears to be satisfied with the conclusions and recommendations of the Disciplinary Review Board. We find that the accused misrepresented to his client that he had initiated court proceedings to foreclose the client's lien and thereby violated DR 1-102(A)(4).

We agree with findings and conclusions of the two boards as to the other charges. We do not accept their recommendation as to the penalty.

It should not be assumed that reprimand always or generally is the appropriate penalty when a lawyer neglects the matters entrusted to him by a client. From a client's viewpoint, nonperformance by neglect, needless and unexplained delay, and especially failure to communicate or to respond to inquiries no doubt can be as frustrating as outright prevarication or some other disciplinary violations can be, even when the neglect does not result in the ultimate loss of the client's objective. *In re Holm,* 285 Or 189, 194, 590 P2d 233 (1979) (Holman, J., concurring)(60 day suspension for dilatoriness and neglect); *In re Guerts,* 290 Or 241, 246, 620 P2d 1373 (1980)(30 day suspension for neglect, and noting "potentially disastrous consequences of procrastination or inattention for the parties concerned.") In this instance, we have found the further violation of DR 1-102(A)(4). We therefore conclude that the appropriate penalty is a 60 day suspension from the practice of law.

■   An extraneous element may have influenced the board's recommendation as to penalty. The trial board discussed "stress" that compelled the accused to close his office for five weeks in the spring of 1983 and that may still "bother" the accused. The board recommended that this court consider

whether to refer the question of the accused's competence to practice law to the Bar for further investigation. The Disciplinary Review Board wrote that the transcript is "not clear on the point but the Accused appears to have had some serious problem," and it joined in the trial board's recommendation.

It does not require a referral from this court for the Bar to undertake such an investigation. The Bar has access not only to the transcript of this case, but to whatever personal observations led the members of the trial board to raise the question. Rule 3.2(b) of the Rules of Procedure states how the Bar may bring the results of such an investigation before the court, if it decides to do so.

The accused is suspended for 63 days beginning on April 23, 1985. The Bar may recover its costs.