COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Karl J. HORN, Respondent.

No. 85–1242.

Supreme Court of Iowa.

Dec. 18, 1985.

Comito & Capps, Des Moines, for complainant.

Karl J. Horn, Charles City, pro se.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

The Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) initiated this proceeding before the Grievance Commission, charging respondent Karl J. Horn in two divisions. The first claim alleges respondent failed to respond to notices sent by the committee prior to its filing a formal complaint. The second claim alleges that the respondent neglected to timely file, as executor of an estate, for an investment credit carryback, made misrepresentations to his client and another lawyer regarding the same, and failed to timely transfer stock certificates in an estate proceeding.

■ Respondent appeared in person and testified before the Grievance Commission. The Grievance Commission filed a report incorporating its findings of fact, conclusions of law, and recommendations. The Commission determined that respondent violated disciplinary rules as to the second claim and recommended that his license to practice law be suspended for a period of three months. Respondent took no appeal from the report. *See* Iowa Sup.Ct.R. 118.-10, .11. In this situation we review the record de novo and decide the matter. Iowa Sup.Ct.R. 118.10. We are not bound by the Commission's findings or recommendations, but give respectful consideration to them. *Committee on Professional Ethics and Conduct v. Freed*, 341 N.W.2d 757, 758 (Iowa 1983).

Respondent has been licensed to practice law in this state since 1962. During his first five years of practice he was employed as house counsel for a Charles City corporation. Thereafter, respondent was employed at a Charles City law firm for eight years. Since that time he has been a sole practitioner engaged primarily in a general practice of law.

The alleged ethical violations which initially led to a complaint being filed against the respondent arose from his handling of an estate. A client, who was a friend of respondent, died leaving a substantial estate that included several farming operations. In his will, drafted by respondent, decedent named respondent as his executor. Respondent also served as attorney for the estate. Under the terms of the will, decedent's net estate was left in trust. Decedent designated a daughter, who lived nearby, to act as trustee. Soon after the estate was opened, the daughter became dissatisfied with respondent's handling of the estate and retained her own personal attorney.

When the estate was closed, the daughter's attorney, acting on behalf of his client, filed a complaint with the committee regarding respondent's handling of the estate. The matter was not resolved and this proceeding was instituted before the Grievance Commission. We consider each of the two formal complaints separately.

I. *Failure to cooperate.* The facts relating to the allegations that respondent failed to cooperate with the committee are not in dispute. When the committee received the letter from the attorney representing decedent's daughter, it notified respondent that an investigation would be made and that there would be a hearing on the matter. A copy of the complaint was enclosed and the committee made the following request: "In the meantime, you are requested to furnish the Committee with a statement responsive to this complaint, which statement may be addressed in my care. Please see Rule 3.3 of the enclosed Rules of Procedure of the Committee."

No response was received from the letter and approximately eight weeks later a second letter was sent to respondent. In pertinent part the letter stated:

This letter constitutes notice under Rule 3.3 of the Rules of Procedure of the Committee on Professional Ethics and Conduct of the Iowa State Bar Associa-

tion, and you are advised to govern yourself accordingly.

That Rule provides:

"If after thirty days,[1] no such response from respondent has been received, he shall be notified by restricted certified mail that unless he responds thereto within ten days from receipt of notice, complaint may be filed with the Grievance Commission for failure so to respond, and concerning all or any portion of the matter about which complaint was made, and the committee shall proceed therewith thereafter, if no response is received."

Again, respondent failed to respond to the committee's request. The committee alleges that respondent's failure to reply constitutes unethical and unprofessional conduct requiring that disciplinary action be taken.

Respondent admitted that he received the letters from the committee and that he did not respond to such letters. He conceded that the responsible thing to do would have been to respond to such inquiries and that such response probably would have aided the committee in its investigation. However, respondent gave no explanation or excuse for his failure to respond except that "I may have a psychological problem somewhere."

The Grievance Commission's findings of law determined that:

As to the failure to respond to the communications of the Ethics Committee it is quite true that Respondent did so but the Commission is cited to and finds no authority holding the same to constitute grounds for actionable misconduct. The Respondent was certainly foolish in not responding and he gives no explanation for this failure.

In a concurring opinion, one member of the Commission asserted that Rule 3.3 is a rule and not a standard of ethical conduct. He concluded that if failing to comply with Rule 3.3 is to be an ethical violation, it should be set forth as such in the canons of ethics or rules of discipline so that all attorneys would be put on notice.

Whether an attorney commits a separate ethical violation by failing to answer the committee's request for a reply to its complaint, is an issue of first impression in this jurisdiction. Other courts, however, have addressed this issue. The general rule is that a lawyer owes an obligation to cooperate with discipline authorities regardless of whether there is a rule requiring a response. Generally, a failure to respond to an investigation committee's request for an answer to a complaint is deemed a separate act of misconduct subjecting the attorney to discipline. *See, e.g., In re Evans*, 661 P.2d 171, 174–77 (Alaska 1983) (failure to respond to investigative inquiry constitutes a default under state bar rule and subjects attorney to disciplinary measures); *In re Draper*, 317 A.2d 106, 108 (Del.Supr.1974) (record of failing to cooperate with the censor committee, an arm of the court, requires severe discipline); *Matter of Russell*, 424 A.2d 1087, 1088 (D.C.App.1980) (an attorney violates DR 1–102(A)(5) by failing to respond to bar counsel's inquiries); *Matter of Kopp*, 402 Mich. 74, 77, 259 N.W.2d 559, 560 (1977) (failure to answer request for investigation is violation of procedural rules of grievance board and constitutes misconduct which requires appropriate discipline); *Matter of Serstock*, 316 N.W.2d 559, 561 (Minn.1982) (failure to respond to the disciplinary investigations is a violation of DR 1–102(A)(1), DR 1–102(A)(5) and DR 1–102(A)(6)); *In re Lince*, 200 N.W.2d 56, 58–59 (N.D.1972) (failure to submit written answer to a complaint filed by grievance commission, answer interrogatories, and appear before the commission violates rules of disciplinary procedure and merits condemnation even though attorney was found not to have committed the breach of conduct alleged in the underlying complaint); *Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240, 241–42 (1982) (failure to respond to complaint and cooperate with investigation is misconduct and reason for sanction); *In re Clark*, 99 Wash.2d 702,

1. Rule 3.3 was subsequently amended to require a response within 20 days rather than 30 days.

663 P.2d 1339, 1341–42 (1983) (although underlying complaint dismissed, attorney was suspended for violating state bar rule that required attorney to cooperate with the bar association); *Matter of Elliott*, 83 Wis.2d 904, 907, 266 N.W.2d 430, 431–32 (1978) (failure to cooperate with discipline authorities pursuant to state bar rule is ethical violation subjecting attorney to discipline); *cf. In re Geurts*, 290 Or. 241, 620 P.2d 1373, 1376 (1980) (noncooperation with discipline review board, by itself, not grounds for ethical violation as rules of professional discipline don't give fair notice of the terms and limits of that obligation).

It is vital to the accused lawyer, the members of the bar, and the general public that a complaint against a lawyer be promptly investigated and evaluated. The Washington court in *Clark* stated:

Compliance with these [state bar] rules is vital. The practice of law has been a profession of the highest order since its inception and it must continue to be so. Internal investigations and self-discipline are the very heart of a profession, as distinguished from a trade or business. The Bar Association's investigation of a complaint is an integral part of the machinery for handling charges regarding the ethics and conduct of the attorneys admitted to practice before this court. Public confidence in the legal profession, and the deterrence of misconduct, require prompt, complete investigations. The process of investigating complaints depends to a great extent upon an individual attorney's cooperation. Without that cooperation, the Bar Association is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit. Obviously, unless attorneys cooperate in the process, the system fails and public confidence in the legal profession is undermined. If the members of our profession do not take the process of internal discipline seriously, we cannot expect the public to do so and the very basis of our professionalism erodes. Accordingly, an attorney who disregards his professional duty to cooperate with the Bar Association must be subject to severe sanctions. 663 P.2d at 1341–42. We agree with this observation. We would add that in our state many attorneys and lay persons freely give their time to help police the legal profession. For their largely thankless efforts, these people do not deserve to be stonewalled.

██ That is not to say that a lawyer accused of violating professional ethics must cooperate to the extent of losing his fifth amendment rights. *Spevack v. Klein*, 385 U.S. 511, 514, 87 S.Ct. 625, 627, 17 L.Ed.2d 574, 577 (1967). While an attorney need not incriminate himself, he has an obligation to respond to the committee's request even if it is only to announce that he is exercising his fifth amendment rights.

██ We hold that in not responding to the committee's requests, respondent violated DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice) and DR 1–102(A)(6) (engaging in any other conduct, not detailed as misconduct in DR 1–102(A)(1)–(5), that adversely reflects on his fitness to practice law).

II. *Misrepresentations and neglect.* The Commission found that respondent made misrepresentations to decedent's daughter and her attorney which adversely reflected upon his fitness to practice law in violation of DR 1–102(A)(4) (engaging in conduct that involves dishonesty, fraud, deceit or misrepresentation) and DR 1–102(A)(6) (engaging in any other conduct, not detailed as misconduct in DR 1–102(A)(1)–(5), that adversely reflects on his fitness to practice law). Also, the Commission found that by failing to file for investment credit carryback respondent violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him). Although other matters were set out in the committee's original complaint, we agree with the Commission that these two issues are the only viable claims.

The estate proceeding from which this complaint originated was quite complicated. Outside the matters that we shall subsequently discuss, the Commission found that

the respondent did an exemplary job of disposing of the leases and getting the estate generally handled and timely closed. However, a problem arose when it was discovered that the decedent had failed to take an investment tax credit for the year prior to his death. Respondent did not prepare the decedent's tax returns. However, a tax refund could be obtained by amending the return and claiming an investment credit carryback. Thereafter, the certified public accountant who had completed the original return prepared an amended return and later prepared a second amendment to correct errors he made in preparing the first one. These amended returns were then forwarded to respondent for him to sign and file as executor of decedent's estate. We agree with the Commission's finding that:

> Despite efforts ... (by the daughter's attorney), the Respondent did not file the tax refund, did not check to determine whether it had in fact been filed and did in fact fail to get the refund. In addition, Respondent did misrepresent to (the attorney) that he was dealing with the Internal Revenue Service concerning tax audits, and while it is unclear whether the Respondent did or did not meet with representatives of the Internal Revenue Service concerning the case he certainly did not meet with them concerning the refund. It is also correct that the Respondent misled (the attorney) and his client with respect to the submission of documents by promising to submit the documents and not doing so, and as the promises were unfulfilled the representations were misleading.

The refund was to be for $2,789 and was never received because respondent failed to file the amended return before the statute of limitations had run. Thereafter, decedent's daughter sued respondent to recover damages for the amount of the refund if it had been filed timely. Respondent did not challenge the suit and allowed a default judgment to be entered against him. Only after an execution of the judgment was issued against him did respondent enter into a settlement with the decedent's daughter.

We agree with the Grievance Commission's conclusion that as the result of these actions respondent violated DR 1–102(A)(4), DR 1–102(A)(6) and DR 6–101(A)(3). Respondent failed to handle a matter entrusted to him. He misrepresented facts to the decedent's daughter and her lawyer when he indicated that he had timely applied for the investment tax carryback.

III. *Discipline.* We agree with the Commission's recommendation that respondent's license to practice law in the courts of this state, as that term is defined in Iowa Supreme Court Rule 118.12, be suspended indefinitely with no possibility of reinstatement for three months from the date of the filing of this opinion. We believe that this is the appropriate sanction for the ethical violations detailed in divisions I and II.

LICENSE SUSPENDED.