Argued and submitted March 1, accused suspended from practice of law for 30 days, effective 60 days from date of filing of decision May 27, 2010

## In re Complaint as to the Conduct of

### SCOTT M. SNYDER,
*Accused.*

## (OSB Case No. 08-19; SC S056998)

232 P3d 952

Kevin Keaney, Portland, argued the case and filed the brief for the accused.

Susan Roedl Cournoyer, Assistant Disciplinary Counsel, Oregon State Bar, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar charged the accused with four violations of the Oregon Rules of Professional Conduct (RPC). A trial panel of the Disciplinary Board found the accused guilty of three of the charged offenses and imposed a sanction of a 60-day suspension. The accused seeks review of that decision. ORS 9.536(1); Bar Rules of Procedure (BR) 10.1 and 10.3. The Bar, for its part, asks this court to find that the accused also committed the fourth alleged violation. *See* BR 10.5(c) (permitting the Bar to urge rejection of any part of trial panel decision in answering brief). On *de novo* review, ORS 9.536(2); BR 10.6, we affirm the trial panel's findings that the accused committed three of the charged violations. We reject the Bar's contention that it proved by clear and convincing evidence that the accused committed the fourth charged violation. Finally, we conclude that a 30-day suspension from the practice of law is an appropriate sanction.

All of the accused's alleged violations arose out of his representation of a single client, Cohn. Cohn is a Florida resident who happened to be in Portland, Oregon, in January 2005, when he slipped and fell on some ice on the sidewalk outside the Marriott Hotel, where he was staying. Cohn was injured and sought medical treatment. In June 2005, Cohn asked the accused to represent him in suing the Marriott, the City of Portland, and Multnomah County. In response, the accused sent Cohn an e-mail with various documents attached, which the accused told Cohn needed to be filled out for the representation to begin. Cohn filled out the forms and returned them a few days later. Cohn also mailed the accused his medical records.

The accused took several actions on Cohn's behalf almost immediately: He sent tort claim notices to the city and county; he sought ownership information from the Marriott; and he placed the Marriott on notice of a potential claim. The accused sent Cohn copies of those notices. The accused also began exchanging e-mails with Cohn to set up an in-person meeting in Portland in August, when Cohn would be back in Oregon. In the course of that e-mail exchange, Cohn mentioned that he could not find a copy of his medical records (he

had either misplaced them or sent the accused the originals) and asked the accused to provide him with a copy.

The two met in Portland on August 23, 2005. During that meeting, the accused explained to Cohn his conclusion that the city and county would not be liable for Cohn's injuries because, under the Portland City Code, the Marriott, as the owner of the adjacent property, was responsible for the condition of the sidewalk on which Cohn had slipped and fallen. The accused did not provide Cohn with the requested copy of his medical records either before or at the meeting.

After Cohn returned to Florida, Cohn again asked the accused for a copy of his medical records, again explaining that he could not find his copy. The accused did not respond to that request. The accused later testified that he assumed that Cohn could assemble another set of his medical records by requesting them from each of his providers. However, the accused did not advise Cohn of that assumption or tell Cohn to ask the providers for copies. The accused finally provided Cohn with copies of his medical records in September 2007, more than two years after Cohn's first request and well after this disciplinary action was underway.

Meanwhile, the accused received responses from the city and the county denying liability, and from the Marriott, asking for more information to permit it to better assess the claim. The accused did not reply to those responses or send copies to Cohn. The Marriott sent a second request for information in October 2005 and a third in February 2006. Cohn's health insurer also sent the accused two letters in late 2005, asking for more information about Cohn's claim and asserting a recovery right related to medical expenses. The accused never responded to any of those requests; neither did he communicate with Cohn to tell him about any of those letters or send him copies of them.

In November 2005, Cohn wrote the accused a letter to update the accused on the status of his injury. Cohn told the accused that he believed himself to be medically stationary at that time (that is, that his injury was not amenable to further treatment), but he also informed the accused that he was depressed and suicidal as a result of his injuries. Cohn asked the accused to do whatever was possible to expedite

the case and he asked for a status report with time frames. He also enclosed more recent medical reports. There is some indication in the record that the accused and Cohn had a telephone conversation sometime in November, but the accused did not memorialize that conversation in any notes and neither Cohn nor the accused could remember what they discussed. In any event, the accused did not take any action in the case in response either to Cohn's letter or to the conversation.

The accused later explained that he did not move forward with the litigation or negotiations after Cohn asked him to do so in the November letter, because he did not think Cohn's condition was stationary at that time. However, there was no evidence that the accused took any steps to ascertain whether Cohn's condition had changed or become stationary. For example, the accused never talked to Cohn's health care providers, nor did he ask for any other medical records. Moreover, the accused did not advise Cohn that, in his opinion, nothing could be done on the case at that time because Cohn's condition was not stationary.

Cohn sent an e-mail to the accused to two different addresses on February 10, 2006, stating his understanding that he would know within six months whether the Marriott would make a reasonable offer. When a copy of that e-mail to one of the accused's addresses came back as undeliverable, Cohn also faxed a copy of the e-mail to the accused's office. The accused did not respond to those requests for information. The accused later explained that he was in Africa at the time of those e-mails. He had not notified Cohn that he would be unavailable and he did not set up automated responses to phone calls or e-mails advising callers or senders that he was away. The accused also later stated that the fax must have been filed in his absence, because he never saw a copy of it.

In any event, the accused did not communicate with Cohn or do anything to further the case after he returned from his trip.[1] On July 14, 2006, Cohn sent the accused an angry letter, giving the accused until July 31 to reply. Cohn

---

[1] The accused claimed to have looked at the file in April but had no notes memorializing that activity.

again outlined his understanding from the initial conversation that the accused would file a lawsuit if Cohn had not received a reasonable settlement offer from the Marriott within six months of his becoming medically stationary, and that it would take about a year to adjudicate the case. He noted in the letter that he had telephoned the accused on July 10, and that the accused had not responded to that call or to any other communication from Cohn in eight months.

The accused responded to that letter with a brief e-mail on July 22, advising Cohn that he would write shortly and acknowledging that he had received the July 10 phone call, but explaining that he had not yet answered it because another client had been killed by a drunk driver, and the accused was assisting the client's family with the aftermath of that event.

The accused did send a letter to Cohn on July 26, formally responding to Cohn's letter. The tone of the accused's letter was confrontational and accusatory. In that letter, the accused provided Cohn with his first status report of the case. He advised Cohn that both the city and the county were immune from liability for his injuries. The accused reviewed the medical records that Cohn had provided to him, pointing to the fact that those records indicated that Cohn had had some kind of accident several years before the fall and had been injured in a traffic accident shortly after the fall. The accused suggested that Cohn had hidden that information from him, and told Cohn that those injuries would make any recovery from the Marriott more difficult. The accused told Cohn that it would take a lawsuit to get any money out of the Marriott and suggested that it would be expensive to bring the case to trial. He asked Cohn for $500 for costs before going forward and gave Cohn a deadline of August 18 to make a decision.

In response, Cohn wrote a letter to the accused terminating the lawyer-client relationship. Three months later, Cohn filed a Bar complaint against the accused, stating, among other things, that the accused had failed to return his file and that he had contacted five other lawyers who all had declined to represent him because of the short time frame before the expiration of the statute of limitations. Cohn never

filed suit against the Marriott and did not recover any damages for his injuries.

The Bar asked the accused for a response to Cohn's complaint. In his response, the accused stated that, after taking the case, he had discovered a number of problems with the case that would make Cohn's claims harder to prove and that would probably necessitate a lawsuit, rather than negotiations, to persuade the Marriott to pay damages. He also had concluded that Cohn's situation would not become stationary before the statute of limitations expired. The accused did not acknowledge that he had not communicated with Cohn between August 2005 and July 2006 or that he had not investigated whether any of the problems that he had identified actually were impediments to the case. He did admit that he had not asked his client for records relating to the motor vehicle accident, and that he had not asked him whether he still was seeing a physician for his injuries.

The Bar charged the accused with violating four Rules of Professional Conduct: RPC 1.4(a) ("A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."); RPC 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); RPC 1.3 ("A lawyer shall not neglect a legal matter entrusted to the lawyer."); and RPC 1.15-1(d) ("[A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive[.]").

After a hearing on the matter, the trial panel issued an opinion in which it found that the accused had committed three of the four charged violations (discussed below) and suspended the accused from the practice of law for 60 days. As noted, the accused now seeks review of that decision in this court.

Here, the accused contends that his failure to communicate with Cohn showed poor business sense, but it did not amount to an ethical violation. He also argues that, in any event, the 60-day suspension was too severe. The Bar asserts that the trial panel correctly found that the accused

violated RPC 1.4(a), RPC 1.4(b), and RPC 1.15-1(d). In addition, the Bar contends that there is clear and convincing evidence that the accused neglected a legal matter in violation of RPC 1.3. Finally, the Bar argues that a 60-day suspension is appropriate. We begin by considering the charged ethical violations.

The Bar alleges that the accused violated RPC 1.4(a), which provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Relatedly, the Bar also alleges that the accused violated RPC 1.4(b), which provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The Bar contends that the accused violated both those rules by failing to communicate with Cohn for at least eight months. Specifically, the accused did not inform Cohn that the Marriott's claims department had sent him three requests for information about the claim. In addition, although the accused claims to have made a tactical decision neither to acknowledge nor respond to the Marriott's requests, he never informed Cohn about that decision. Neither did the accused inform Cohn about correspondence that he had received from Cohn's health insurer, asserting recovery rights that could have affected the amount that Cohn ultimately might have received on his claim. Furthermore, although the accused had concluded that Cohn was not medically stationary (notwithstanding Cohn's contrary belief) and that it was therefore premature to commence settlement negotiations with the Marriott, the accused did not inform Cohn of that conclusion. Finally, the accused failed to respond to Cohn's repeated phone calls and e-mails asking for information about the case. In fact, until the accused finally responded to Cohn's urgent messages and letter about the case in July 2006, Cohn had been completely uninformed about of the status of his case.

The accused does not dispute any of the foregoing facts. Instead, he contends that, if the Bar and the trial panel had a "realistic understanding of trial practice," they would see that his actions amounted to no more than "[l]ess-than stellar customer relations." In support of that position, the

accused asserts that, during the eight-month period between the accused's last communication with Cohn in November 2005 and his July 2006 response to Cohn's letter threatening to terminate the representation, Cohn had to have understood the status of the case. That is, Cohn had to have known that the Marriott had made no settlement offer, because Cohn would have had to be consulted about it. In conclusion, the accused argues that there is no bright line concerning how long a lawyer can go without communicating with a client or how many client phone calls a lawyer can fail to return before the failure amounts to an ethical violation. Here, according to the accused, he clearly did not drop below the standard of what a reasonable lawyer would have done in his circumstances because, he contends, Cohn was not actually harmed by the accused's failures.

The accused displays a fundamental misunderstanding about what the Rules of Professional Conduct require. RPC 1.4 requires lawyers to maintain reasonably adequate communication with their clients by keeping clients informed about the status of their matters, by complying with reasonable requests for information, and by explaining matters to the extent reasonably necessary to permit clients to make informed decisions. Although RPC 1.4 is a relatively new rule in Oregon, a lawyer's duty to communicate with clients was a part of the diligence requirement of *former* Disciplinary Rule (DR) 6-101(B), which dealt with neglect of a legal matter. In considering alleged violations of that rule, this court held that failing timely to communicate good or bad news to the client constituted a violation of that rule, *In re Coyner*, 342 Or 104, 108, 149 P3d 1118 (2006), as did failing to keep a client informed about the status of the case, *In re Bourcier*, 325 Or 429, 432-33, 939 P2d 604 (1997). The court also observed, in a case in which a lawyer did not write any letters to his client about the case and failed to return his client's phone calls or respond to the client's requests for progress reports, that neglect of a client and procrastination are violations of professional responsibility. *In re Geurts*, 290 Or 241, 245-46, 620 P2d 1373 (1980).

In this case, we have no difficulty concluding that the accused's failure to communicate with Cohn went well beyond "bad customer relations" and violated RPC 1.4(a) and

(b). The accused failed to discharge his professional responsibility to keep his client reasonably informed about the status of the case when he did not apprise Cohn about communications with the Marriott, Cohn's health insurer's assertion of recovery rights, or his own judgment that settlement negotiations should not be (and therefore had not been) commenced. He also failed to discharge his professional responsibility to respond to reasonable requests for information when he ignored Cohn's repeated requests for updates and information about the case and for confirmation of Cohn's understanding of how the case would proceed. Those requests were reasonable in substance and timing.

■■ Finally, the accused failed to discharge his professional responsibility to explain the case to Cohn to the extent reasonably necessary to permit Cohn to make informed decisions about it. Although "not every failure to respond to a client's requests [for information] also constitutes a failure to explain a matter sufficiently," *In re Koch*, 345 Or 444, 455, 198 P3d 910 (2008), a lawyer is required to consult with a client and to discuss concerns that a claim may lack merit or should not be pursued. *Geurts*, 290 Or at 246 n 6 (that a client's claim lacks merit "cannot excuse a failure promptly to consult with the client and discuss this conclusion with him"). Here, the accused did not inform Cohn that he did not believe that Cohn was medically stationary and that, therefore, settlement negotiations were premature, or that Cohn's case was much weaker than he previously had believed because of Cohn's other injuries. Those conclusions are precisely the kind of information that a client needs to know in order to make informed decisions about the case. We find that the Bar has proved by clear and convincing evidence that the accused violated RPC 1.4(a) and (b).

■■ The Bar also contends that the accused violated RPC 1.3, which provides that "[a] lawyer shall not neglect a legal matter entrusted to the lawyer." Neglect is "the failure to act or the failure to act diligently." *In re Magar*, 335 Or 306, 321, 66 P3d 1014 (2003). An isolated incident of negligent conduct does not establish neglect; rather, unethical neglect exists when there is a course of neglectful conduct in the representation of a client. *Id.*; *Bourcier*, 325 Or at 433.

The Bar argues that the accused neglected Cohn's legal matter by failing to take any action to "meaningfully investigate or advance" Cohn's claims after his initial activity in mailing notices to various opposing parties. The Bar points out that the accused failed to advocate for Cohn's interests when he ignored requests for information from the Marriott and Cohn's insurer, and that he took no steps to investigate concerns raised by Cohn's medical records. The Bar argues that this court has found unethical neglect in other cases under similar circumstances. For example, in *In re Knappenberger*, 337 Or 15, 24, 90 P3d 614 (2004), this court found that a lawyer had violated *former* DR 6-101(B) (predecessor of RPC 1.3) when, over the course of several months, he failed to read or respond to correspondence dealing with several significant events in a case he was handling for his client, and failed even to check on the status of the case despite inquiries from the client. And in *In re Dugger,* 299 Or 21, 697 P2d 973 (1985), this court found that a lawyer unethically neglected a client for two years when, after filing a construction lien for his client, he determined that the case lacked merit but did not inform the client of that conclusion, did not take any other action in the case, and did not return the client's phone calls.

Whether the accused violated RPC 1.3 in his representation of Cohn is a close question. However, on balance, we agree with the trial panel that the accused's conduct with respect to Cohn's matter does not rise to the level of an ethical violation. The accused worked on the case in July and August 2005. There is evidence in the record that he may have reviewed the file in November 2005 and April 2006, although he did not memorialize any work done at those times. The trial panel found that the accused had made a strategic decision not to take any action in the case because of Cohn's medical instability, and that the accused's lack of action in the case reflected that strategic decision. We accept that assessment. In addition, during the hearing on these charges, the accused put forth a tactical justification for not replying to the correspondence from the Marriott and Cohn's insurer. Those factors differentiate this case from *Knappenberger* and *Dugger*, although the facts in *Dugger* are close. The distinction between this case and *Dugger* lies in Dugger's failure,

even after he determined to abandon his client's cause, to so inform the client. We hold that the Bar has not shown by clear and convincing evidence that the accused violated RPC 1.3.

■■ Finally, the Bar charged the accused with violating RPC 1.15-1(d), because he failed to return Cohn's file materials, including his medical records, promptly upon request. RPC 1.15-1(d) provides that "[a] lawyer shall promptly deliver to the client or third person funds or other property that the client or third person is entitled to receive." A lawyer's case files are "property" of the client that must be returned. *See In re Worth*, 336 Or 256, 270, 82 P3d 605 (2003) (lawyer violated predecessor of RPC 1.15-1(d) when he failed to return client files when requested to do so); *In re Devers*, 317 Or 261, 265, 855 P2d 617 (1993) (same). The accused does not challenge the trial panel's finding that he failed promptly to return Cohn's files and medical records. We find that the Bar proved by clear and convincing evidence that the accused violated RPC 1.15-1(d).

■■ Having found that the accused violated RPC 1.4(a), RPC 1.4(b), and RPC 1.15-1(d), we turn to the appropriate sanction. In so doing, we consider the following factors in deriving a presumptive sanction: (1) the ethical duty violated; (2) the lawyer's mental state; and (3) the actual or potential injury caused by the misconduct. *In re Jackson*, 347 Or 426, 440, 223 P3d 387 (2009); American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) 3.0(a)-(c). We then consider whether any aggravating or mitigating circumstances justify an adjustment to that presumptive sanction. *Jackson*, 347 Or at 440-41; ABA Standard 3.0(d). Finally, we consider the appropriate sanction in light of this court's case law. *Jackson*, 347 Or at 441.

The accused in this case violated his duty to his client to act with reasonable diligence and promptness in communicating with and representing his client, ABA Standard 4.4. The accused also violated his duty to preserve his client's property when he failed promptly to return Cohn's files and records. ABA Standard 4.1.

We turn to the accused's mental state. A lawyer acts negligently when he fails to "heed a substantial risk that circumstances exist or that a result will follow" and that failure "is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA Standards at 7. A lawyer acts knowingly if he acts with "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* A lawyer acts intentionally when he acts with "the conscious objective or purpose to accomplish a particular result." *Id.* The trial panel found that the accused acted negligently in failing to communicate with Cohn but knowingly in failing to return Cohn's files and records.

The Bar argues that the record establishes that the accused acted knowingly in failing to communicate with Cohn, insofar as the accused knew that he had not returned his client's phone calls; he knew that he had not answered e-mails; he knew that he had not informed his client regarding the status of the case; he knew that he had not explained that his change of strategy was a result of his new impressions of the facts; and he knew that he had not disclosed to Cohn his opinion that Cohn was not medically stationary and that Cohn's other injuries would complicate his case.

In addition, the Bar contends that, although the record supports the trial panel's finding that the accused acted knowingly in failing to return Cohn's files and records, there also is evidence to suggest that the accused acted intentionally to deprive Cohn of those materials. Specifically, the Bar points to the accused's testimony at the hearing in this proceeding suggesting that he did not respond to Cohn's repeated requests for copies of his medical records because Cohn could have obtained them himself from his medical providers. The accused also testified that he did not provide the case file upon Cohn's request because he assumed that he would eventually provide it to another lawyer who might take over the representation.

We agree with the Bar that the accused acted knowingly with respect to his violations of RPC 1.4(a) and (b). That is, the accused had to have been consciously aware of that

he was not responding to Cohn's phone calls, letters, and e-mails. Even accepting the accused's explanation for his failure to respond to Cohn's February 2006 e-mails and fax, the accused had to have been aware that he had ignored Cohn's numerous other efforts to communicate with the accused. In addition, given that Cohn's inquiries almost always included references to his understanding that recovery, or at least litigation, was imminent, we find that the accused was aware that he had not informed his client about either the status of the case or his own reassessment of the strategy that they would pursue.

However, we disagree with the Bar's assertion that the accused acted intentionally with respect to his failure to return Cohn's records and files. The accused's testimony at the hearing in this proceeding reveals that he knew that he was obligated to return the case file to Cohn. Moreover, the accused's testimony reveals that he was consciously aware that Cohn had asked for copies of his medical records and for the case file and that the accused had not sent them. Clearly, the accused acted knowingly. However, our *de novo* review of the record does not convince us that the accused acted with "the conscious objective or purpose to accomplish a particular result," beyond the necessary consequence that the client would not have the records.

We turn to the question of injury. The ABA Standards define "injury" as follows:

> " 'Injury' is harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury."

ABA Standards at 7. The accused has contended throughout this proceeding that Cohn did not suffer any injury to his case as a result of the accused's inaction, because, in his response to Cohn's July 2006 letter, he offered to initiate a lawsuit if Cohn would advance $500 in filing fees and, in any event, at the time that Cohn terminated the representation, the statute of limitations had not yet run. That argument misses the point. The accused's failure to communicate prevented Cohn from taking other measures to pursue his claim and, together

with the accused's failure to return the medical records and client files, left Cohn in the difficult position of trying to find new counsel only a few months before the statute of limitations expired. Moreover, even if Cohn ultimately would not have been able to recover against the Marriott, Cohn clearly suffered anxiety and frustration from the accused's lack of communication and failure to respond to his requests for the files and records. Client anguish, uncertainty, anxiety, and aggravation are actual injury under the disciplinary rules. *See In re Paulson*, 346 Or 676, 717, 216 P3d 859 (2009), *adh'd to as modified on recons*, 347 Or 529, 225 P3d 41 (2010) (anguish and uncertainty are actual injury); *In re Jones*, 312 Or 611, 618, 825 P2d 1365 (1992) (client anxiety and aggravation are actual injury); *In re Arbuckle*, 308 Or 135, 140, 775 P2d 832 (1989) (same). We find that the accused's actions caused actual injury to his client.

█ The ABA Standards provide that a suspension is the presumptive sanction for the accused's violations. ABA Standard 4.12 provides that "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." In addition, ABA Standard 4.42(b) indicates that suspension is appropriate when "a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

██ Having determined preliminarily that suspension is the appropriate sanction, we consider any aggravating or mitigating circumstances that would affect our sanction determination. We find two aggravating circumstances: the accused committed multiple offenses, ABA Standard 9.22(d), and he has substantial experience in the practice of law, ABA Standard 9.22(i).[2] In mitigation, we find that the accused did

---

[2] The trial panel also found that the accused's refusal to acknowledge the wrongful nature of his conduct is an aggravating circumstance in this case. ABA Standard 9.22(g). As this court has observed, however, an accused in a bar disciplinary proceeding has a right to defend himself vigorously against disciplinary charges, *In re Davenport*, 334 Or 298, 321, 49 P3d 91, *modified on recons*, 335 Or 67, 57 P3d 897 (2002), and we are reluctant to punish a lawyer for "defend[ing] against accusations respecting his or her personal character and professional responsibility." *Id*. In this case, it is sufficient to note that the existence of this aggravating circumstance is not pivotal to our analysis.

In addition, the Bar argues for another aggravating factor, *viz.*, that the accused acted with a dishonest or selfish motive. ABA Standard 9.22(b). The Bar

not have a prior disciplinary record, ABA Standard 9.32(a); that he did not have a selfish or dishonest motive, ABA Standard 9.32(b); and that he cooperated with the disciplinary proceedings, ABA Standard 9.32(e).

 On balance, we conclude that a suspension of some term is appropriate in this case. We turn to a review of our case law to help us determine the duration of that suspension. The Bar points us to three cases that we agree are pertinent to our analysis:[3] *In re Knappenberger*, *In re Dugger*, and *In re Geurts*.

In *Knappenberger*, the lawyer had violated *former* DR 6-101(B) (neglect of a legal matter) by failing to respond to correspondence regarding significant developments in the case and by failing to check on the status of the case despite numerous inquiries from his client. The court found that the lawyer had acted negligently in committing that violation, and that the misconduct did not result in as serious an injury as in other cases. However, the accused's neglect caused the client anxiety and frustration and deprived him of the opportunity to respond to developments in the case. In addition, the aggravating circumstances in that case outweighed the mitigating factors. The court suspended the lawyer for 60 days for that violation. 337 Or at 33.

In *Dugger*, the lawyer filed a construction lien on behalf of his client and then determined that the case lacked merit. However, he did not inform the client of that conclusion for over two years, he did not take any other action in the case, and he did not return the client's phone calls. This court found that that conduct violated *former* DR 6-101(A)(3) (neglect of a legal matter). In addition, the court found that the lawyer misrepresented to his client that he had filed an action to foreclose the lien, in violation of *former* DR 1-102(A)(4). Moreover, the court found that, after the disciplinary proceeding commenced, the lawyer failed to promptly

---

theorizes that the only explanation for the accused's failure to return Cohn's files was a desire to hide the fact that he had not responded to the Marriott's requests for information. The record does not support that conclusion.

[3] The Bar cites three other cases as well, but we do not find those cases helpful, because the lawyer's conduct in those cases was substantially more egregious than that of the accused's here.

and affirmatively respond to Bar inquiries in violation of *former* DR 1-103(C) (setting out such a requirement). The court concluded that a 63-day suspension was appropriate in that case. 299 Or at 29-30.

Finally, in *Geurts*, the court found that, over a period of two years, the lawyer failed to respond to 10-12 telephone calls and two letters from the client, and did not respond to 17 telephone calls and three letters from the opposing party concerning a settlement offer. The court imposed a 30-day suspension for the lawyer's neglect of his client's claim in violation of *former* DR 6-101(A)(3). In doing so, however, the court observed that it recently had begun to treat lawyer misconduct that involved neglect and procrastination more seriously than it had in the past, and emphasized that merely because, in *Geurts*, it concluded that a 30-day suspension was appropriate, "this should not be misunderstood to mean that substantially stronger disciplinary measures may not be applied to future violations of [*former*] DR 6-101(A)(3)." 290 Or at 246.

We have been unable to find a case involving the knowing failure to return client property that did not also involve much more serious misconduct than was present here. Nonetheless, as we discussed above, a suspension of some term also is appropriate for that violation.

We think that, in this case, taking into consideration this court's case law and the aggravating and mitigating circumstances, a 30-day suspension is warranted. The accused's behavior was perhaps most similar to that of the lawyer in *Knappenberger*. The court there imposed a 60-day suspension for a single violation charging neglect of a legal matter. Here we have found that the accused committed three separate ethical violations, but in *Knappenberger*, the aggravating factors clearly outweighed the mitigating factors. The lawyer in *Dugger* was suspended for 63 days for three violations of the disciplinary rules, one of which involved a misrepresentation to a client. And, as noted, the court suspended the lawyer in *Geurts* for 30 days for neglecting his client over a two-year period.

In selecting a sanction, we conclude that a sanction of 30 days is appropriate. The accused's actions, although justifying a suspension, were not as serious as those in the cases on which the Bar relies. In our view, a suspension of 30 days strikes the appropriate balance.

The accused is suspended from the practice of law for 30 days, effective 60 days from the date of the filing of this decision.