Argued and submitted September 7, accused suspended from practice of law for three months, effective 60 days from date of this decision; should he apply for reinstatement to Bar, accused shall be required to follow procedure set out in Bar Rule 8.1(b) December 14, 2006

# In re Complaint as to the Conduct of

# CRAIG C. COYNER, III,
*Accused.*

## (OSB 03-49, 03-57, 04-103; SC S53254)

149 P3d 1118

Craig C. Coyner, III, Bend, argued the cause and filed the brief for himself.

Stacy J. Hankin, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.*

PER CURIAM

_____

* Riggs, J., retired September 30, 2006, and did not participate in the decision of this case. Walters, J., did not participate in the consideration or decision of this case.

## PER CURIAM

This is a lawyer disciplinary proceeding in which the accused was found guilty by a trial panel of a total of nine violations of the Code of Professional Responsibility[1] arising out of three separate matters. The trial panel imposed a six-month suspension from the practice of law, with the further provision that the accused be required to apply for reinstatement formally. The accused appeals from that decision. For the reasons that follow, we affirm the trial panel's findings respecting the accused's guilt, but modify its choice of sanction.

We make the following preliminary observations. The accused's brief raises three different kinds of issues. The first kind of issue involves various procedural concerns about the course of the trial panel proceedings. We have considered the accused's concerns, but find no basis for concluding that any of them affected the quality or accuracy of the proceeding, or in any way prejudiced the accused. A more complete explanation of them would not benefit the public, the bench, or the bar.

The second kind of issue that the accused presents revolves around the question of his guilt of the charges against him. However, as we shall explain, a stipulation by the accused at the beginning of the trial panel hearing process significantly limits our review of those matters.

The third kind of issue involves the question of sanction. Unfortunately, although the accused raised the issues, he failed to develop them in any substantive way in his brief and did little more during his oral presentation to this court. However, the Bar has briefed the matter extensively, and the bulk of the hearing before the trial panel was devoted to that question. We therefore have a sufficient record, even with only limited assistance from the accused, to assess and assign an appropriate sanction for the accused's conduct.

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct at issue in this case occurred before that date, we apply the Code of Professional Responsibility.

## I. BACKGROUND AND DISCIPLINARY VIOLATIONS

We turn to a discussion of the background facts and the charges against the accused. As noted, the Bar charged the accused with nine violations of the Code of Professional Responsibility arising out of three separate matters. The accused stipulated at the beginning of the hearing before the trial panel that the Bar could prove the facts alleged in its Amended Formal Complaint by clear and convincing evidence. The trial panel therefore found the accused guilty in each matter. In spite of that stipulation, the accused appears (at least in his brief) to take exception to certain of the findings of guilt. We review the facts of each of the matters briefly. (The facts stated either were stipulated to or otherwise appear to be uncontested.)

The accused is a Bend area lawyer with 32 years of experience. He has a history of bipolar disorder, which went incorrectly diagnosed for a time. That misdiagnosis appears to have played some role in the difficulties that arose between the accused and the Bar, although the accused does not assert (and we do not independently find) that his condition excuses his conduct.

### A. *The Amos Matter*

The accused was appointed to represent Amos in an appeal. For nearly a year, the accused had no communication with Amos and took no action with respect to the appeal. The Court of Appeals notified the accused that, unless he made a showing to justify continuing the appeal, it would be dismissed. The accused made no effort to make that showing and the appeal was dismissed. The accused did not notify Amos of that fact; Amos learned of it from an independent source nearly four months later. Based on the foregoing, the Bar charged (and the trial panel found) that the accused was guilty of, among other things, neglect of a legal matter, DR 6-101(B).

Given his stipulation that the Bar could prove the underlying facts by clear and convincing evidence, the accused has no ground on which to challenge the factual basis for the trial panel's finding of guilt. He does argue, however, that (1) there was no arguable legal merit to the Amos

appeal; (2) he therefore could not ethically have pursued it; and (3) it follows that he could not be found guilty of neglect of a matter "that he could not ethically nor legally pursue." That is not the law. The lawyer must communicate bad news as well as good to the client, and failing to do so in a timely manner is neglect of a legal matter. *See, e.g., In re Geurts*, 290 Or 241, 246 n 6, 620 P2d 1373 (1980) (lawyer's opinion that client's case lacked merit did not excuse neglect, at least to extent of so informing client). We find the accused guilty of neglect in his handling of the Amos matter.

The trial panel also found the accused guilty of conduct prejudicial to the administration of justice, DR 1-102(A)(4), in connection with the Amos matter, based on his failure to respond to a show cause order and other inquiries by the Court of Appeals. The accused does not offer any discernable defense with respect to that charge. We find him guilty of violating DR 1-102(A)(4).

B. *The Muschitz Matter*

Muschitz, an Ohio resident, hired the accused to attempt to obtain a modification of a child support obligation imposed on Muschitz by an Oregon decree. During the ensuing proceedings, the opposing lawyer filed a motion to require Muschitz to produce certain documents. Muschitz supplied some of—but not all—the documents to the accused, who then failed to provide them to the opposing lawyer. Eventually, that failure led to a motion by the opposing lawyer to dismiss Muschitz's case. The accused did not inform Muschitz of the motion and did not respond to the motion on Muschitz's behalf. When the trial court allowed the motion, the accused did not inform Muschitz of that fact or of the fact that the trial court had included a judgment against Muschitz. The trial panel found that the conduct described constituted neglect of a legal matter and that the accused had violated DR 6-101(B).

The accused's only defense to the above charge is the same defense that he offered in the Amos case—there was no merit to Muschitz's legal position and, therefore, the accused could not ethically pursue it. As we have explained with respect to the Amos matter, however, that argument is unresponsive to the charge and we reject it. As did the trial panel,

we find the accused guilty of neglecting a legal matter in the Muschitz litigation.

■ The Bar also charged the accused in the Muschitz matter with violating two other disciplinary rules—DR 9-101(A) (failure to deposit client funds in a trust account) and DR 9-101(C)(3) (failure to render appropriate accountings to a client). The charges arose out of the fact that Muschitz sent the accused two checks totaling $1,000 for work that the accused would perform in the case, to be earned by the accused at the rate of $150 per hour. The accused deposited one of those checks in his general account before having earned all of it and did not deposit the other check in his client trust account at all. After Muschitz repeatedly asked the accused for an accounting, the accused gave an accounting orally but never reduced the accounting to writing.

So far as we understand them, the accused's only arguments respecting the foregoing facts are that (1) he only transferred a small amount of money to his own account before it was earned; (2) although his records are insufficient to prove it, the transfer may have been justified in full; and (3) he thought that an oral accounting would be enough. However, those arguments are contrary to the accused's stipulations concerning the Bar's evidence. We find the accused guilty of those two additional violations.

■ The Bar's investigation of the Muschitz matter led to one more charge, this one involving failure to cooperate in a disciplinary investigation, DR 1-103(C). The stipulated facts are that the accused failed on at least two separate occasions to provide information related to the Bar's investigation.[2] The accused acknowledges as much, but asserts that the Bar wanted too much too fast, given the accused's fragile (and misdiagnosed) mental health condition. Even if that were true at the outset of the Bar's investigation, however, the accused does not appear to have asked for more time during the investigation, even after he hired another lawyer to help him. We find the accused guilty of violating DR 1-103(C) in the Muschitz matter.

---

[2] One occasion was the accused's failure to make his Muschitz file available. A Local Professional Responsibility Committee (LPRC) eventually had to subpoena the file.

## C. *The Accused's Criminal Charges*

■    On December 15, 2003, the accused was charged with resisting arrest and criminal mischief. The accused was released conditionally pending trial. One condition of that release prohibited the accused from consuming alcohol and visiting bars and taverns. Within a month, the accused twice violated that condition by consuming alcohol. The accused was charged with contempt of court respecting each of the two alcohol consumption incidents. Eventually, the accused pleaded no contest to the resisting arrest charge and the two contempt charges. He was found guilty on all three charges and was placed on probation for 24 months. Thereafter, the Bar requested information about the episode from the accused. The accused failed to respond.

The Bar asserted, and the trial panel found, that the facts underlying the accused's contempt convictions constituted a violation of DR 1-102(A)(4) (conduct prejudicial to administration of justice) and DR 7-106(A) (disregard of tribunal's ruling during course of proceeding). Based on the accused's failure to respond to the Bar's inquiries, the Bar also asserted, and the trial panel also found, that the accused had violated DR 1-103(C) (failure to cooperate in Bar investigation).

The accused's only defense to those disciplinary charges is that he could not have been guilty of the two contempt offenses because there were irregularities respecting the charging instruments. It follows, he reasons, that the release agreement respecting those offenses that was the basis of the two contempt charges was derivatively invalid and, therefore, he could not legally have been in contempt of anything.

What the accused is doing here is mounting a collateral attack on the charges of which he was convicted. The accused did not appeal those convictions. And, as this court has explained in other settings, an unappealed conviction ordinarily becomes a verity when the time for appeal has run. *See* ORS 9.527 (providing that conviction of certain types of offense is grounds for disbarment, suspension from Bar membership, or reprimand, and stating that, in such matters, "the record of the conviction shall be conclusive evidence"). *See*

*also State v. Probst*, 339 Or 612, 625-26, 124 P3d 1237 (2006) (illustrating that rule). Nothing about the subject matter of the present proceeding or the nature of the accused's collateral attack suggests that the ordinary rule should not apply. The time for the accused's appeal of the two contempt convictions—if there were to have been one—elapsed years ago. He cannot now attack the charging instruments collaterally. We find the accused guilty of violating DR 1-102(A)(4), DR 7-106(A), and DR 1-103(C) in the 2003 criminal matter.

In summary, we find the accused guilty of each disciplinary violation that the Bar alleged. We turn to the issue of sanction.

## II.   SANCTION

■       As noted, the trial panel imposed a six-month suspension, with the proviso that the accused be required to make a formal application for reinstatement. In selecting that sanction, the trial panel appears to have fully credited evidence offered by the accused that, during the period in question, the accused was suffering from both an incorrectly diagnosed mental condition and a chemical dependency problem. (The trial panel specifically noted that both problems now seem to be under control, due in significant part to the accused's own efforts.) Respecting the sanction, the accused asks only that this court modify the sanction to five years' probation under a set of conditions that have been recommended by a psychiatrist who examined him. For its part, the Bar simply notes that the sanction that the trial panel imposed is within the parameters set both by the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and by this court's case law. In addition, the Bar particularly urges that the accused be required to go through the formal reinstatement process, in order better to ensure that the accused is mentally fit to practice law.

A.   *Methodology*

The trial panel correctly considered the ABA Standards and this court's case law in seeking to identify the appropriate sanction. We follow the same paradigm. *See, e.g., In re Paulson*, 341 Or 13, 29, 136 P3d 1087 (2006) (describing

paradigm). This court considers three factors set out in the ABA Standards: (1) the duty violated; (2) the lawyer's mental state; and (3) the actual or potential injury caused by the misconduct. ABA Standard 3.0. Based on its evaluation of those factors, the court then arrives at a tentative sanction, which it adjusts, where appropriate, based on aggravating or mitigating circumstances. *See Paulson*, 341 Or at 29-34 (illustrating process).

## B. *Duties Violated*

The most important duties that a lawyer owes are those owed to the client. ABA Standards at 5. In his case, the accused failed in his duty both to Amos and to Muschitz when he neglected their legal matters. He further failed in his duty to Muschitz when he mishandled funds in Muschitz's case and then failed to account for them appropriately.

The accused also violated duties that he owed to the legal system to avoid conduct prejudicial to the administration of justice in both the Amos case and the criminal matter. Equally serious was his failure to obey court orders.

Finally, the accused violated his duty to the profession in both the Amos and Muschitz matters when he failed to cooperate with the Bar's investigations.

## C. *Mental State*

As to the mental state element, we agree with the trial panel and the Bar that the accused acted knowingly when he neglected the Amos legal matter and intentionally when he failed to respond to the order to show cause in that case. In the Muschitz matter, we find the majority of the accused's violations to have been knowing, with the exception of his failure to cooperate with the Bar's investigation: We find that latter violation to have been intentional. The accused's violation of DR 9-101(A) (respecting his failure to deposit client funds in a trust account) was negligent. In the criminal case, the accused acted intentionally.

## D. *Injury*

An injury can be either actual or potential. ABA Standards at 6-7; *In re Williams*, 314 Or 530, 547, 840 P2d 1280 (1992). Here, the accused's violations caused actual

injury to both Amos and Muschitz. The Bar also was injured by the accused's failure to cooperate, because the Bar was required to engage in efforts that should not have been necessary to complete its investigations. The accused's actions in the criminal matter injured the legal system itself by requiring contempt proceedings.

## E. *Preliminary Sanction*

The combination of (for the most part) intentional and knowing mental states with actual injury caused suggests that, at the least, a significant period of suspension is the appropriate sanction in this case. ABA Standard 4.42(a) (suspension appropriate when lawyer knowingly fails to perform services for client and causes actual potential injury to client); ABA Standard 6.22 (suspension appropriate when lawyer violates court order and there is actual or potential injury to client or legal proceeding); ABA Standard 7.2 (suspension appropriate when lawyer violates duty to profession and causes actual or potential injury to legal system). With that kind of presumptive sanction in mind, we turn to the aggravating and mitigating factors.

## F. *Aggravating and Mitigating Factors*

The trial panel found several aggravating factors and two mitigating ones. Although we do not in every instance agree with the trial panel's assessments, we conclude that the various factors are sufficiently balanced so that they leave the presumptive sanction—suspension—unaffected. We discuss one mitigating factor—mental disability or chemical dependency—fully, because the accused relies heavily on that factor with respect to the issue of sanction.

The trial panel found that there was medical evidence of both mental disability and chemical dependency (alcoholism) and that both conditions caused or contributed to the underlying misconduct. *See* ABA Standard 9.32(i)(1), (2) (amended 1992). The Bar disagrees with the trial panel insofar as it relies on chemical dependency as a mitigating factor. The Bar does not dispute that chemical dependence played a role in the accused's disciplinary rule violations. It points out, however, that, in order for chemical dependency

to be considered in mitigation of a disciplinary rule violation, the record must show not only that that condition played a role, but also that (1) the accused since that time has experienced a meaningful and sustained period of successful rehabilitation; and (2) the recovery is such that recurrence of the misconduct is unlikely. *See* ABA Standard 9.32(i)(3), (4) (amended 1992) (setting those requirements); *In re Cohen (Cohen II)*, 330 Or 489, 502-03, 8 P3d 953 (2000) (explaining requirements).

The trial panel concluded that the accused had met the foregoing test. In so concluding, it relied on testimony from a psychiatrist, the head of the Bar's own Oregon Attorney Assistance Program, and a number of the accused's fellow lawyers, all to the effect that the accused met the *Cohen II* standard. The Bar, on the other hand, relies on testimony from two other experts that casts significant doubt on the optimistic assessments on which the trial panel relied.

A detailed recitation and review of the evidence in question would not benefit the parties, the public, the Bar, or the bench. It is sufficient here for us to say that, having reviewed all the evidence *de novo*, we do not find it to preponderate in favor of the accused on the issue. Certainly, the accused has made significant strides. But those strides are too recent and too incomplete to satisfy us that the accused has achieved remission. Given that assessment of the record, the accused has failed to show that the mitigating factor of chemical dependency is present.

G. *Case Law*

We turn to this court's case law. Our previous cases indicate that some period of suspension is appropriate. *See, e.g., In re LaBahn*, 335 Or 357, 359-67, 67 P3d 381 (2003) (lawyer previously admonished for violating DR 6-101(B) given 60-day suspension for violating same rule); *In re Meyer II*, 328 Or 220, 970 P2d 647 (1999) (lawyer previously reprimanded for neglect of legal matter given one-year suspension for again violating DR 6-101(B)). Certainly, under the precedents, the number and breadth of the accused's rule violations also calls for a suspension.[3]

---

[3] The accused argues otherwise, seeking instead to have this court reinstate him conditionally, subject to a long period of probation. However, the assumption

As to the length of the sanction, the one that the trial panel chose doubtless is within the acceptable range. However, both the trial panel's choice of sanction and our own reading of the record suggest that the accused has a very good chance of recovering from his problems and resuming his position as a respected member of his legal community. We do not think that a suspension of more than three months is necessary to make it possible to assess the accused's condition and his ability to rejoin the profession. We therefore suspend the accused for three months. We think that, when that sanction is coupled with the requirement that the accused go through the formal reinstatement process, the public will be adequately protected and, at the same time, the accused will have a reasonable opportunity to show that he has overcome his dependency and is once again fit to practice law.[4]

The accused is suspended from the practice of law for three months, effective 60 days from the date of this decision. Should he apply for reinstatement to the Bar, the accused shall be required to follow the procedure set out in Bar Rule 8.1(b).

---

underlying that alternative approach is that we will be convinced, on this record, not only that the accused has eliminated his chemical dependancy problem, but also that he will be unlikely to suffer a relapse. As we elsewhere have indicated, however, we are not sufficiently satisfied as to the first point and therefore cannot have the requisite degree of confidence as to the second. It follows that we do not accept the accused's suggested sanction.

[4] Ordinarily, a member of the Bar who has been suspended for misconduct for a period of six months or less would be reinstated upon the filing of a Compliance Affidavit. BR 8.3. However, as Bar Rule 8.3 acknowledges, this court may give other directions for reinstatement.