Argued and submitted November 5, 2010, complaint against accused dismissed
March 25, 2011

In re Complaint as to the Conduct of

DAVID E. GROOM,

*Accused.*

(OSB 08-105; SC S057898)

249 P3d 976

Wayne Mackeson, Portland, argued the cause and filed the briefs for accused. With him on the briefs was Kelly Jaske, Portland.

Mary A. Cooper, Assistant Disciplinary Counsel, Oregon State Bar, argued the cause and filed the brief for the Oregon State Bar.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.*

PER CURIAM

---

* Gillette, J., retired December 31, 2010, and did not participate in the decision of this case. Landau, J., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer discipline case, the Bar charged the accused with violating Rule of Professional Conduct (RPC) 1.4, which requires that a lawyer keep a client reasonably informed and explain a matter to a client to the extent reasonably necessary to permit the client to make informed decisions.[1] We conclude that the Bar did not prove that charge by clear and convincing evidence, and we hold that the accused is not guilty of that charge and related charges brought by the Bar and decided by the trial panel.[2]

The charges against the accused arose from the accused's representation of Richard Eugene Evett (Evett) in the appeal of a circuit court judgment dismissing Evett's petition for a writ of habeas corpus. The Bar alleged that Evett asked the accused to file a motion to vacate that judgment of dismissal and that, although the accused agreed to consider doing so, he neither acted nor informed Evett of his decision not to act. In support of those charges, the Bar proved the facts that follow. Except as otherwise indicated, those facts are uncontested.

Evett was on probation for committing federal crimes when he was arrested on charges of committing additional Oregon crimes. As a result, the federal court revoked Evett's probation and sentenced him to two years in federal

---

[1] RPC 1.4 provides:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[2] The Bar also charged the accused with violating RPC 8.4(a)(3) (lawyer may not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The trial panel concluded that the Bar failed to prove that charge by clear and convincing evidence, and the Bar does not challenge that conclusion. We choose to accept that decision of the trial panel without further discussion. *See In re Hartfield*, 349 Or 108, 111, 239 P3d 992 (2010) (" '[O]rdinarily we will consider the issues for our review to be those framed by the parties' briefs and arguments.' " (quoting *In re Paulson*, 346 Or 676, 679 n 3, 216 P3d 859 (2009), *adh'd to as modified on recons*, 347 Or 529, 225 P3d 41 (2010)).

Although the Bar did not charge the accused with violating RPC 1.2(a) (lawyer must abide by client's decisions), the trial panel decided, *sua sponte*, that he did so. The Bar concedes that the trial panel erred in reaching that conclusion and we accept its concession. *See* ORS 9.534(2) (accused entitled to written notice of charges and opportunity to defend against charges).

prison in Arizona. Evett also was convicted in state court and sentenced to 13 months of incarceration to be served after completion of the federal sentence. To ensure that Evett would return to Oregon to serve that sentence, the state lodged a detainer against him. However, some time later, the state withdrew the detainer and instead issued a warrant for Evett's arrest.

Evett was released from federal prison in March 2003. Approximately two years later, Evett was arrested in California on the Oregon warrant and, after waiving extradition from California, was returned to Oregon. In March 2005, Evett began to serve his 13-month sentence at Snake River Correctional Institute (SRCI).

On May 13, 2005, Evett filed a petition for a writ of habeas corpus in Oregon circuit court, and Charles Simmons was appointed to represent him. In his petition, Evett, through Simmons, alleged that he was unlawfully imprisoned because, among other things, Oregon had lost jurisdiction over him when it withdrew the detainer and then delayed execution of the arrest warrant. The circuit court, which we will refer to as the habeas court, granted the state's motion to dismiss Evett's petition and entered judgment in its favor.[3] Evett appealed that judgment, which we will refer to as the habeas judgment, to the Oregon Court of Appeals.

On October 17, 2005, the accused was appointed to represent Evett in his appeal of the habeas judgment. Evett had already served approximately eight months of his 13-month sentence, and the accused warned him that if he was released from state custody before the appeal was decided, the appeal could become moot and the state could seek its dismissal.

Unbeknownst to the accused, while Evett was pursuing his habeas appeal, Evett also was pursuing a parallel civil action seeking money damages for unlawful imprisonment at SRCI. Simmons, the attorney who had represented Evett in bringing the habeas petition, represented Evett in that civil action.

---

[3] Nothing in the record reveals the trial court's reasons for granting the state's motion.

Simmons was concerned about the effect that the habeas judgment could have on the civil action because, to be successful in the civil action, Evett had to prove that his imprisonment at SRCI was unlawful.[4] However, in dismissing the habeas petition, the habeas court apparently had decided to the contrary—that Evett's imprisonment at SRCI was lawful. Simmons understood that the court in the civil action could decide, applying the rule of issue preclusion, that the decision of the habeas court was binding on it and could not be relitigated. If Evett's appeal of the habeas judgment were successful, the habeas judgment would be reversed and would no longer serve as a potential bar to Evett's civil action. If, however, Evett's appeal were dismissed as moot, the habeas judgment would stand, potentially precluding Evett's claim for money damages. Simmons researched the legal issue and learned of a possible solution to that perceived dilemma. In particular, Simmons learned that if Evett were precluded from pursuing his appeal because it was moot, Evett could seek to have the Court of Appeals vacate the habeas judgment on equitable grounds.

When Evett was released from post-prison supervision on March 23, 2007, Simmons anticipated that the state would file a motion to dismiss the habeas appeal; he therefore contacted the accused to seek his help in obtaining vacatur of the habeas judgment. Simmons initially telephoned the accused and then followed up by e-mail on April 24, writing:

"Thank you for discussing this case with me the other day. As you probably know, I am currently representing Mr. Evett in a civil rights action arising out of the same facts as the habeas corpus appeal in which you are currently representing him.

---

[4] For the most part, Evett's allegations in his civil action duplicated those in the habeas case. In his civil action, Evett alleged that Oregon had lost jurisdiction over him when it withdrew the detainer and was equitably estopped from enforcing its sentence when it failed to arrest Evett until approximately two years after his release from federal custody. In the civil action, Evett asserted one claim that he had not pressed in the habeas case. Evett alleged that the state had miscalculated the amount of time that he was required to serve at SRCI when it failed to credit Evett for the time that he already had served in the Douglas County Jail while awaiting trial for the state charges. Therefore, Evett argued, the state had held him in prison beyond the term permitted by his sentence.

"It would be helpful if, when DOJ moves to dismiss the appeal as moot, you would request that the Court of Appeals vacate the trial court's decision, based on *Kerr v. Bradbury*, 340 Or. 241, 131 P.3d 737, *adhered to on recons*, 341 Or. 200, 140 P.3d 1131 (2006), *City of Eugene v. State, PERB*, 341 Or. 120, 137 P.3d 1288 (2006), *PGE v. IBEW Local 125*, 209 Or. App. 77, 146 P.3d 333 (2006), and *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). I think there is a good argument to be made under those cases that, because the mootness was not due to any voluntary action by Mr. Evett, but was rather the result of the inevitable expiration of the post-prison supervision term due to the delays normally inherent in litigation, it would be inequitable to require Mr. Evett to be subjected to issue preclusion based on an unreviewed and likely erroneous trial court decision. While this might not make a difference in the habeas corpus case, it is very important to the civil litigation."

A few days later, on April 26, the state filed a motion to dismiss the habeas appeal on the grounds that it had become moot. The deadline for response to that motion was May 10. ORAP 7.05(3) (14-day period for response to motion).

On May 1, 2007, the accused informed Simmons, by e-mail, of the state's motion and that he was considering what response, if any, to make:

"Charles—the motion from the state to dismiss for mootness has just arrived and I am considering what response I might make. I will try to file against this motion, but I fear that the court will rule that habeas relief is a jurisdictional issue, and that his release from any form of custody removes their jurisdiction. I'll keep you posted when I respond."[5]

To consider what response he might make, the accused examined the authorities that Simmons had provided and discussed the issue with his colleagues. The

---

[5] Simmons testified that he did not receive that e-mail, however Simmons also testified that he had moved from his law office on that day and, that, as a result, the e-mail address that he had been using and to which the accused had addressed his correspondence was no longer available to him. Given Simmons's testimony, the Bar does not claim that the accused did not send the May 1, 2007, e-mail.

accused determined that Evett had no legal basis for contesting the state's motion to dismiss; the appeal was unquestionably moot. The accused therefore believed that a request for vacatur of the habeas judgment should not be made in opposition to the state's motion but, instead, should be made after the Court of Appeals had ruled on that motion. In the accused's opinion, it would be procedurally appropriate to seek an order of vacatur after entry of an order allowing the motion to dismiss but before the issuance of the appellate judgment, at which time the Court of Appeals would lose jurisdiction. *See* ORS 19.270(6) (Court of Appeals has jurisdiction until appellate judgment issues). The accused did not file a response to the motion to dismiss, nor did the accused inform Simmons or Evett of his thinking.

On June 5, 2007, after the time for responding to the motion to dismiss had elapsed, Simmons sent the following e-mail to the accused:

> "Has the Court of Appeals made any ruling on the motion to dismiss the appeal as moot? Attached is the part of my argument from the civil cases that addresses the issue of vacation of the trial court's decision when the case becomes moot on appeal. I thought this might be of some use to you."

On June 7, 2007, the accused responded, also by e-mail:

> "No ruling yet. Thanks for the attachment, *I'm in the process of seeing what I can use.*"

(Emphasis added.) Thus, as of June 7, both Simmons and the accused were aware, or should have been aware, that the time for filing a response to the motion to dismiss had elapsed and that the accused was still "in the process" of thinking about what action he could take.

Simmons claims that he had the following telephone conversation with the accused a week or two later, in mid to late June:

> "My best recollection of the conversation is I called him up. I said, 'Hi. Remember me? I'm representing Mr. Evett in a civil case. Did you get my e-mail?' 'Yes, I got your e-mail.' 'Did you go ahead and file the response like we had talked

about?' Mr. Groom said, 'Yes.' I said, 'Thank you.' That was the end of the conversation."

The accused denies that any such conversation took place.[6]

In the meantime, the defendants in the civil case had filed a motion for summary judgment arguing, in part, that the habeas judgment precluded relitigation of the lawfulness of Evett's confinement at SRCI. Simmons filed a response on June 15, 2007, and argued that "strong equitable and practical considerations counsel[ ] against application of claim and issue preclusion." Simmons also argued that Evett was seeking vacation or reversal of the habeas judgment, which would nullify its preclusive effect, and suggested that the circuit court defer ruling on the defendants' motion for summary judgment until the Court of Appeals acted. The circuit court took the parties' arguments under advisement.

On July 9, 2007, the Court of Appeals entered an order dismissing Evett's habeas appeal as moot. The deadline for filing a petition for reconsideration of that decision was July 23. ORAP 6.25(2) (petition for reconsideration must be filed within 14 days of decision). On July 17, Simmons sent the accused an e-mail request for a status report. In an e-mail response dated July 18, the accused told Simmons that the Court of Appeals had ordered dismissal and promised to fax Simmons a copy of that order. When the order did not arrive, Simmons reminded the accused of his promise and the accused both faxed and mailed a copy of the order that same day—July 26.

Simmons was out of town and did not receive the copy of the order of dismissal that the accused had sent until on or about August 2, 2007. Once he read it, Simmons surmised that the accused had not filed a motion to vacate and immediately called the accused to inquire. The accused informed Simmons that, indeed, he had not filed a motion to vacate and had not done so because he did not believe that such a motion would have merit.

---

[6] Because we accept the trial panel's conclusion that the Bar did not prove its charge that the accused was guilty of dishonesty, fraud, or deceit in violation of RPC 8.4(a)(3), we also accept its implicit finding that the accused did not tell Simmons that he had filed a response to the motion to dismiss when, in fact, he had not done so.

Simmons briefly considered seeking to substitute himself as counsel of record in the habeas appeal and then filing a motion to vacate. However, Simmons decided that the time for doing so had elapsed. He therefore took no action in the Court of Appeals. The appellate judgment dismissing the habeas appeal issued on September 12, 2007.

On October 8, 2007, Simmons sent a letter to the judge assigned to the civil case and conceded that issue preclusion foreclosed most of Evett's claims. The judge granted the defendants' motion for summary judgment in its entirety on December 6, effectively concluding the civil case.

On March 25, 2008, Simmons wrote to the Bar to report what he considered to be the accused's ethical violations. The Bar charged the accused with violating RPC 1.4, and, following a hearing, the trial panel found the accused guilty of that charge and imposed a four-month suspension. The accused seeks review of the trial panel decision. *See* ORS 9.536(1) (parties may appeal trial panel decision directly to Supreme Court).

RPC 1.4 provides:

"(a)   A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information

"(b)   A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

The Bar had the burden of establishing a violation of that rule by clear and convincing evidence. Bar Rules of Procedure (BR) 5.2. " 'Clear and convincing evidence' means evidence establishing that the truth of the facts asserted is highly probable." *In re Magar*, 335 Or 306, 308, 66 P3d 1014 (2003).

Before this court, the Bar maintains that it met its burden of proof by establishing that the accused decided not to file a motion to vacate the habeas judgment and failed to communicate that decision to Simmons or Evett. The Bar takes the position that "[i]f the Accused had communicated his conclusion and decision to Simmons/Evett, the Bar would not be alleging unethical conduct."

For his part, the accused maintains that he owed no duty to Evett with regard to the civil case and told Simmons only that he would look into the information that Simmons had provided. The accused contends that, after looking at that information, he decided that a motion to vacate would be without merit and informed Simmons of that conclusion. If Simmons had determined that such a motion would be meritorious, the accused asserts, Simmons could have filed the motion.

The uncontested facts establish that the accused informed Simmons of his decision not to file a motion to vacate on or about August 2, 2007, when Simmons received a copy of the order of dismissal and talked with the accused by phone. In that conversation, the accused confirmed Simmons's conclusion that the accused had not filed the motion and told Simmons that he had not done so because he did not believe that the motion had merit. Thus, the issue before us is not whether the accused failed entirely to communicate his decision not to file a motion to vacate; the issue is whether the accused's failure to communicate before August 2 constituted a failure to keep his client "reasonably" informed of the status of the matter as required by RPC 1.4. RPC 1.0(k) provides that " '[r]easonable' or 'reasonably' when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer."

This court has applied RPC 1.4 in two cases that shed light on the factors that are relevant to our inquiry. In *In re Snyder*, 348 Or 307, 315, 232 P3d 952 (2010), the court found a violation of RPC 1.4 when the lawyer failed to communicate with his client for eight months. During that time, the lawyer made numerous tactical decisions in the personal injury case that he was handling for the client, did not discuss those decisions with the client, and ignored the client's "urgent messages." *Id.* at 314. The client terminated the relationship after learning of the lawyer's decisions, but no other lawyer would accept the client's case because of the narrow window for filing the personal injury action within the statute of limitations, and, therefore, the client was not able to pursue an action for his injuries. *Id.* at 312. Thus, the court considered, as factors that supported its decision that the lawyer had not kept the client reasonably informed as

required by RPC 1.4, the time that elapsed between the lawyer's decision and the communication of that decision, the lawyer's failure to respond promptly to reasonable requests for information from the client, and the foreseeable prejudice that resulted from the lawyer's delay. The court also considered the client's reasonable and repeated requests for information and the lawyer's six-month delay in communication in finding a violation of RPC 1.4 in *In re Koch*, 345 Or 444, 198 P3d 910 (2008).

Similar factors were also relevant to this court's decisions under *former* Disciplinary Rule (DR) 6-101(B).[7] *See, e.g., In re Coyner*, 342 Or 104, 149 P3d 1118 (2006) (lawyer did not communicate with client for one year, failed to take any action on client's appeal, and failed to notify client that his appeal had been dismissed); *In re Bourcier*, 325 Or 429, 939 P2d 604 (1997) (lawyer failed to communicate with client regarding appeal and did not inform client when briefs were filed and when Court of Appeals upheld conviction); *In re Chandler*, 306 Or 422, 760 P2d 243 (1988) (lawyer failed to communicate with out-of-state clients for three years and kept their file in storage long after new lawyer requested it); *In re Duggar*, 299 Or 21, 697 P2d 973 (1985) (lawyer failed to inform client that case strategy was jeopardized and failed to respond to client's inquiries; client lost opportunity to collect on construction lien). Although *former* DR 6-101(B) addressed a lawyer's obligation to communicate under the rubric of "neglect of a legal matter," that rule addressed the same concern as does RPC 1.4. As we explained in *Snyder*:

> "Although RPC 1.4 is a relatively new rule in Oregon, a lawyer's duty to communicate with clients was a part of the diligence requirement of *former* Disciplinary Rule (DR) 6-101(B), which dealt with neglect of a legal matter. In considering alleged violations of that rule, this court held that failing timely to communicate good or bad news to the client constituted a violation of that rule, * * *, as did failing to keep a client informed about the status of the case * * *. The court also observed, in a case in which a lawyer did not write any letters to his client about the case and failed

---

[7] The former Disciplinary Rules were replaced by the Rules of Professional Conduct in 2005.

to return his client's phone calls or respond to the client's requests for progress reports, that neglect of a client and procrastination are violations of professional responsibility."

348 Or at 315 (internal citations omitted).

From the text of RPC 1.4 and from the cases interpreting it and *former* DR 6-101(B), it is clear that deciding whether a lawyer has violated RPC 1.4 requires a careful examination of all of the facts. Factors that are relevant to that inquiry include the length of time between a lawyer's decision and the lawyer's communication of that decision to the client, whether the lawyer failed to respond promptly to reasonable requests for information from the client, and whether the lawyer knew or a reasonable lawyer would have foreseen that a delay in communication would prejudice the client.

By setting out those factors, we do not intend to imply that any one of them is necessary to establish a violation of RPC 1.4, or that they are the only factors relevant to the inquiry. In some situations, a lawyer may need to communicate a decision immediately to keep a client reasonably informed, and in many instances RPC 1.4 puts the onus on the lawyer to initiate communication with the client. RPC 1.4 includes, but is not limited to, the obligation to promptly respond to client requests. Further, a lawyer's obligation to keep a client reasonably informed exists regardless of the merits of a client's claim or position. If a client's claim or position lacks merit, that lack, and not the lawyer's failure to communicate, ordinarily will be the cause of the client's lack of success and any resulting prejudice. In such a circumstance, the fact that a lawyer's failure to communicate does not prejudice the client does not relieve the lawyer of the ethical duty to communicate. *See In re Geurts*, 290 Or 241, 246 n 6, 620 P2d 1373 (1980) (lawyer's opinion that client's case lacked merit did not excuse neglect, at least to extent of so informing client); *Coyner*, 342 Or at 108 (lawyer must communicate "bad news as well as good to the client" and failure to do so is neglect).

On the other hand, when a lawyer knows or reasonably should foresee that a failure to communicate with a client may itself prejudice that client, and nevertheless engages in delay, that fact is important to a determination of whether the lawyer met the obligations imposed by RPC 1.4. Although proof of a violation of RPC 1.4 does not depend on proof that the lawyer caused prejudice to the client, reasonably foreseeable prejudice, where present, may be material to the inquiry.

In this case, we have no difficulty deciding that the accused was required to inform Simmons, and thereby Evett, of his decision not to file a motion to vacate the habeas judgment. Although the accused represented Evett in the habeas appeal and not in the civil case, he agreed to "look into" whether there were grounds to take action in the appeal that would benefit the civil case. Having undertaken that responsibility, the accused was required to reasonably inform his client of his decision. We also have no difficulty in deciding that the accused informed Simmons, and thereby Evett, of his decision not to file a motion to vacate the habeas judgment on or about August 2, 2007. The issue we face is whether, on those facts and considering the factors we have identified, the accused kept his client "reasonably informed" of the status of the appeal.

We first consider the length of time between the accused's decision not to file a motion to vacate and August 2, 2007. As of June 7, the accused was still "in the process" of examining the case law that Simmons had provided to decide whether he would file a motion to vacate. If the accused made a decision not to file a motion to vacate shortly after June 7, he failed to communicate his decision for a period of approximately two months. However, if the accused made his decision in late July, shortly before he informed Simmons of it, he delayed the communication of that decision for a matter of days. We have reviewed the record and cannot ascertain when the accused made his decision not to file the motion to vacate. As a result, we cannot determine the length of time between the accused's decision and August 2, when the accused communicated that decision, nor can we rely on the length of the accused's delay, if any, as a factor in our analysis.

The second factor to which we turn is whether the accused failed to respond promptly to reasonable requests for information from Simmons or Evett. *See Snyder*, 348 Or at 314 (failure to respond to client's urgent and repeated requests for information); *Koch,* 345 Or at 453 (same). The accused generally answered telephone calls and e-mails from Simmons within a day or two and Simmons found the accused "pretty easy to get ahold of." When Simmons called the accused on or about August 2, 2007, to ask him whether he had filed the motion to vacate, he had no trouble reaching the accused and the accused answered Simmons's questions directly. We can identify only one instance in which the accused did not respond promptly to a request for information from Simmons or Evett—*i.e.*, when the accused failed to send Simmons a copy of the order of dismissal until after Simmons's second request for that document. Specifically, on July 17, Simmons asked the accused for a status report. The next day, July 18, the accused told Simmons that the appeal had been dismissed and that he would fax Simmons a copy of the order of dismissal. However, the accused did not send that copy until after Simmons requested it a second time, some eight days later.

In determining whether the accused "promptly" complied with a "reasonable" request for information as required by RPC 1.4 we can consider the fact that the request came from Simmons, a lawyer who also represented Evett. Although Simmons's request that the accused send him a copy of the court's order of dismissal was reasonable, we note that Simmons could have obtained a copy of that order from the court directly, rather than waiting to receive it from the accused. Furthermore, the accused had accurately informed Simmons of the substance of the order. In that circumstance, we cannot say that the accused's eight-day delay alone demonstrates a violation of RPC 1.4.

Finally, we consider whether the accused knew or should have foreseen that his delay in communicating his decision not to file a motion to vacate the habeas judgment would prejudice his client. If the accused knew or reasonably should have foreseen that, to be successful, a motion for vacatur had to be filed by a certain date, but failed to communicate his decision until after that date, then that fact is relevant in deciding whether the accused violated RPC 1.4.

Whether that fact exists, depends, of course, on the law of vacatur and the time limits, if any, for seeking it.

Vacatur is an equitable remedy that a party may seek when a case becomes moot. *Kerr v. Bradbury*, 340 Or 241, 246, 131 P3d 737, *adh'd to on recons*, 341 Or 200, 140 P3d 1131 (2006). The Bar does not point to any statutes or rules, and we are not aware of any, that expressly address the time frame for filing a motion to vacate in an appellate court. At the disciplinary hearing in this matter, Simmons testified that he believed that the motion to vacate had to be filed in response to the state's motion to dismiss. However, the case law that Simmons provided to the accused demonstrated that, in other cases, parties had sought and obtained vacatur by filing motions for reconsideration seeking that relief *after* an appellate court had held an appeal to be moot. In *City of Eugene v. PERB*, 341 Or 120, 137 P3d 1288 (2006), for example, the petitioners filed a motion for reconsideration after this court had held that their appeal was moot. The court granted the petition for reconsideration because petitioners had demonstrated that "equity call[ed] for vacatur[.]" *Id*. at 127. The parties invoked a similar procedure in the Court of Appeals in *PGE v. Int'l Brotherhood of Electrical Workers*, 209 Or App 77, 79, 146 P3d 333 (2006), *rev den*, 342 Or 644 (2007). There, the defendant filed, and the Court of Appeals granted, a petition for reconsideration seeking vacatur of a circuit court judgment after the Court of Appeals had dismissed the appeal of that judgment as moot.

The accused concluded, and was correct in concluding, that the Court of Appeals could entertain a motion to vacate the habeas judgment as long as it had jurisdiction. *See Jensen v. Bevard*, 217 Or App 309, 312, 175 P3d 518 (2007) (after court reversed and remanded, and after time for filing motion to reconsider had expired, party filed motion to vacate appellate judgment, which court entertained, but denied on merits); *State v. Cozad*, 210 Or App 465, 150 P3d 1113 (2007) (court granted leave to file motion to vacate four months after decision); *State ex rel SOSCF v. Corbit*, 165 Or App 653, 997 P2d 294 (2000), *vac'd and dismissed by order*, May 8, 2000, 3 P3d 171 (2000) (court dismissed appeal because appeal was from nonappealable order; parties filed independent motion to vacate trial court judgment following entry of order dismissing appeal). In this case, the Court of Appeals could have

entertained a motion to vacate until September 12, 2007, when the appellate judgment issued and the court lost jurisdiction. *See* ORS 19.270(6) (court has jurisdiction until appellate judgment issues).

If the accused made his decision not to file a motion to vacate the habeas judgment in early July when the Court of Appeals entered its order of dismissal, the best course would have been for him to communicate his decision to Simmons at that time. However, the Bar did not prove when the accused made his decision or that the accused knew or reasonably should have foreseen at the time that he did so, that delay would foreclose his client's opportunity to seek to vacate the habeas judgment. When the accused informed Simmons of his decision on or about August 2, 2007, Simmons had time to seek to substitute himself as counsel of record in the habeas appeal and to file the appropriate motion.[8]

In summary, we conclude that the Bar did not establish, by clear and convincing evidence, that the accused delayed in communicating his decision not to file a motion to vacate for an unreasonable length of time or under circumstances in which he knew or reasonably should have foreseen that a delay in communicating that decision would cause harm to his client. The Bar also did not establish that the accused failed to promptly comply with Simmons's reasonable requests for information. The Bar does not argue that other facts or factors bear on our decision, and we hold that

---

[8] In reaching that conclusion, we do not intend to foreclose the possibility that Simmons could have asked the Court of Appeals to recall the appellate judgment after it issued or that the only solution to the dilemma posed by Evett's release from custody was the filing of a motion to vacate in the Court of Appeals. Simmons also may have been able to advance the same equitable arguments that he asked the accused to make in support of a motion to vacate to argue against application of the rule of issue preclusion in the circuit court civil action. *See Restatement (Second) of Judgments* § 28 (1982) (listing exceptions to issue preclusion including when a case becomes moot on appeal); *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (party precluded must have had "full and fair opportunity" to litigate the issue). ORCP 71 B also permits relief from judgment in cases where "it is no longer equitable that the judgment should have prospective application." *See* ORS 19.270(1)(e) (trial court retains jurisdiction over a matter for purpose of deciding motion for relief from judgment). We do not opine on the merits of those arguments. We set them forth only to ensure that this opinion is not interpreted to foreclose them.

the Bar did not prove, by clear and convincing evidence, that the accused violated RPC 1.4.

The complaint against the accused is dismissed.